# Composite Exhibit 1

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting __data__ pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>THE ESTATE OF SAMUEL I. ROIG, GAIL OLIVERA, KYLE ROIG, SAM ROIG</u>
Plaintiff
        vs.
<u>UNITED PARCEL SERVICE, INC, ROMAINE SEGUIN, THOMAS O'MALLEY</u>
Defendant

**II.    AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>250,000</u>

**III.    TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

|  |  |
|---|---|
| ☐ Condominium | ☐ Malpractice – other professional |
| ☐ Contracts and indebtedness | ☒ Other |
| ☐ Eminent domain | ☐ Antitrust/Trade Regulation |
| ☐ Auto negligence | ☐ Business Transaction |
| ☐ Negligence – other | ☐ Circuit Civil - Not Applicable |
| ☐ Business governance | ☐ Constitutional challenge-statute or ordinance |
| ☐ Business torts | ☐ Constitutional challenge-proposed amendment |
| ☒ Environmental/Toxic tort | ☐ Corporate Trusts |
| ☐ Third party indemnification | ☒ Discrimination-employment or other |
| ☐ Construction defect | ☐ Insurance claims |
| ☐ Mass tort | ☐ Intellectual property |
| ☐ Negligent security | ☐ Libel/Slander |
| ☐ Nursing home negligence | ☐ Shareholder derivative action |
| ☐ Premises liability – commercial | ☐ Securities litigation |
| ☐ Premises liability – residential | ☐ Trade secrets |
| ☐ Products liability | ☐ Trust litigation |
| ☐ Real Property/Mortgage foreclosure | |
| ☐ Commercial foreclosure | ☐ County Civil |
| ☐ Homestead residential foreclosure | ☐ Small Claims up to $8,000 |
| ☐ Non-homestead residential foreclosure | ☐ Civil |
| ☐ Other real property actions | ☐ Replevins |
| ☐ Professional malpractice | ☐ Evictions |
| ☐ Malpractice – business | ☐ Other civil (non-monetary) |
| ☐ Malpractice – medical | |

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.     REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Non-monetary declaratory or injunctive relief;
☒ Punitive

**V.     NUMBER OF CAUSES OF ACTION:**
(Specify)


9

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ Yes
☒ No

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☐ No
☒ Yes – If "yes" list all related cases by name, case number and court:

CACE-18-006195

**VIII.     IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ Yes
☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:    s/ Chris Kleppin
         Attorney or party
FL Bar No.:   625485
         (Bar number, if attorney)
         Chris Kleppin
         (Type or print name)
Date:    02/28/2020

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and                CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

       Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

       Defendants.

_____/

## COMPLAINT

Plaintiffs, The Estate of Samuel I. Roig, by and through its Personal Representative Gail

Olivera ("The Estate"), Gail Olivera, individually ("Olivera"), Kyle Roig ("Kyle"), and Sam

Roig ("Sam"), through their undersigned attorneys, file this Complaint against the Defendants,

United Parcel Service, Inc. ("the corporate Defendant"), Thomas O'Malley (hereinafter

"Defendant O'Malley", unless noted otherwise), and Romaine Seguin (hereinafter "Defendant

Seguin"), but the three of them are collectively referred to as "Defendant"), and allege:

## JURISDICTION AND VENUE

1.     This suit is brought by The Estate against the corporate Defendant pursuant to

Florida's wrongful death statute (*Florida Statutes* § 768.19 and other §§ of 768), the survival

statute (such as § 46.021 and other §§ 46), *Florida Statutes* § 760.01 *et seq.*, (the "Florida Civil

Rights Act of 1992" or "FCRA"), Florida's Constitution, Florida Const. Art. 10, § 24(c) (the

Estate also brings this claim against the individual Defendants), and brings claims for outrage

(intentional infliction of emotional distress), negligent infliction of emotional distress, and the Florida Whistleblower Act, and against the individual Defendant pursuant to Florida's Wrongful Death Statute, for the torts of outrage (intentional infliction of emotional distress) and negligent infliction of emotional distress, Gail Olivera, individually, brings claims against all three Defendants for intentional outrage (infliction of emotional distress) and negligent infliction of emotional distress, and Gail Olivera, Kyle Roig, and Sam Roig bring claims against all three Defendants for outrage and negligent infliction of emotional distress. Plaintiffs filed a previous Complaint on March 19, 2018, against the corporate Defendant and Defendant O'Malley, which was amended (First Amended Complaint) and then improvidently removed by the Defendants. Plaintiffs refile this Complaint because of the improvident removal. Plaintiffs assert this filing relates back to March 19, 2018 for all claims as to all Defendants, that March 19, 2018 is the starting point of the applicable statute of limitations, and is the date on which the citizenry of the Defendants is to be determined for purposes of diversity jurisdiction (that Defendants O'Malley and Seguin are nondiverse). The multiple filings of pleadings has been made necessary because the Defendants improperly without a basis removed the original First Amended Complaint, even though there was not complete diversity.

2.      Jurisdiction is conferred upon this Court by:

(a)      *Florida Statutes* § 34.01(1)(c)4 (1995) because The Estate, Olivera, Kyle, and Sam are all seeking more than $15,000 in damages;

(b)      Additionally, jurisdiction is conferred upon this Court pursuant to Article V, § 20(c)(3) of the Florida Constitution and *Florida Statutes* § 26.012(2)(c) (1995) because equitable relief is sought by The Estate.

3.      Venue is proper for the Circuit Court of Broward County because:

(a) Samuel I. Roig, (the decedent/former employee of the corporate Defendant, referred to as "Samuel Roig" or "Mr. Roig") was employed in Florida by the Defendant which at all material times conducted, and continues to conduct, business in Broward County, Florida, and resided in Broward County at the time he made complaints of discrimination and other illegal activity related to the Whistleblower Act, and thus venue is statutorily proper in Broward County pursuant to the FWA, and The Estate of Samuel I. Roig was created in Broward County;

(b) Additionally, venue lies pursuant to *Florida Statutes* § 47.051 because the acts that gave rise to both Olivera's, Kyle's, and Sam's claims and The Estate's claims occurred in Broward County, Florida (one of the traumatic events was seeing the dead body of their husband and father in Broward County when it was transported there after his death in Miami-Dade County); and because Defendant keeps an office for the transaction of its customary business in Broward County, Florida, and because Defendant O'Malley resides in Miami-Dade County, Florida;

(c) Venue also lies in Broward County pursuant to *Florida Statutes* § 760.01 *et seq.*, because the adverse and retaliatory personnel action occurred in Broward County; and

(d) The traumatizing event (the transportation of the dead body of Mr. Roig) and the viewing of the dead body by Olivera, Kyle, and Sam occurred in Broward County and thus the cause of action accrued in Broward County.

## ADMINISTRATIVE EXHAUSTION/CONDITIONS PRECEDENT

4. The Estate, Olivera, Kyle, and Sam have complied with all the conditions precedent in this case, or they have been waived.

5. The Estate timely filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission on or about March 1, 2017. The Fourth District Court of Appeal issued in a similar case involving the estate of

a deceased employee recognizing that there does not need to be an employment relationship between a "person aggrieved" as set forth in FCRA and the entity which is the subject of the charge of discrimination, but rather the only requirements are for a charge of discrimination to be filed on behalf of the aggrieved person and that the aggrieved person generally be someone in the zone of interests of the FCRA, that is, people as to whom could be negatively affected by any discriminatory or tortious conduct, such that injury to the individuals being in the zone of interest is reasonably foreseeable. The FCHR did not enter or issue a "no cause" and dismiss the charge of discrimination within 180 days of the charge being filed.

6.      This Complaint has been filed more than one hundred and eighty (180) days after the Plaintiffs' filing a charge with the FCHR. The FCHR did not enter a "no cause" determination within 180 days of the charge being filed.

7.      The Estate, Gail Olivera, Sam Roig, and Kyle Roig have all satisfied all administrative prerequisites for all claims for relief asserted herein and for the Court's assumption of jurisdiction over all claims for relief herein pursuant to FCRA.

## PARTIES

8.      Concerning Plaintiffs, The Estate is duly opened in Broward County Circuit Court (Probate Division) in or about May 2016, and the Personal Representative of The Estate is Olivera. Olivera is a citizen of the State of Florida, who resides within Broward County, Florida, and who was an employee of the corporate Defendant. Kyle and Sam Roig are Olivera's only children with Mr. Roig. The Estate, Kyle, Sam, and Olivera are all citizens of the State of Florida.

9.      Defendant United Parcel Service, Inc., is a corporation which, at all times material, conducted substantial and continuous business in Broward County, Florida, and is subject to the laws of the State of Florida, and has a business office and business location in Broward County,

4

Case 0:20-cv-60811-AMC   Document 1-2   Entered on FLSD Docket 04/17/2020   Page 8 of 113

Florida.  Defendant O'Malley is a manager with the corporate Defendant and was at material times, and Defendant O'Malley resides in Dade County, Florida, and O'Malley is a citizen of the State of Florida, and was when the original Complaint was filed in the case in March 2018 and is currently a citizen of the State of Florida (O'Malley filed for homestead exemption in late 2019 for the entire years 2019 and has filed same for many years).  Defendant Seguin is Defendant O'Malley's boss and a high-level management official with the corporate Defendant and was at material times, and Defendant Seguin resides in Dade County, Florida, and Seguin is a citizen of the State of Florida, paying homestead taxes on her property in late 2019 for the year 2019 (and has filed same for many years) and she was a citizen when the original Complaint in this case was filed and when this case was filed.

10.     The corporate Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of the Florida Civil Rights Act of 1992, *Florida Statutes* § 760.02(6-7).

11.     The decedent, Samuel I. Roig, was, at all times material, an "employee" of the corporate Defendant as defined by *Florida Statutes* § 760.02(5) and Olivera is and was, at all times material, an "employee" of the corporate Defendant as defined by and contemplated by FCRA.

12.     The Estate can bring claims under the FCRA.  The FCRA provides that any "person aggrieved by a violation of [FCRA—*Florida Statutes* § 760.01-.11]" may bring an action against any "employer, employment agency, labor organization, or joint-labor management committee".  *Florida Statutes* § 760.11(1).  There is no requirement that only a current employee of the employer can bring an action under the statute.  *Florida Statutes* § 760.01(2) (stating, to the contrary, that the FCRA contains a broad pronouncement to remedy *all* discrimination in the State of Florida, as it states that the "general purpose[ of the FCRA is] *to*

secure for all individuals within the state freedom from discrimination") (emphasis added). An "employer" is simply defined as "any person employing 15 or more employees . . . and any agent of such a person". *Id.* § 760.02(6-7). There is no requirement that only an employee of the employer can bring an action under the statute. *Id.* § 760.11(1) (stating that "[i]t is an unlawful employment practice for an employer . . . to discharge or fail to hire or refuse to hire *any individual, or otherwise discriminate against any individual* . . .") (emphasis added). The Fourth District Court of Appeal specifically held that an Estate can sue under FCRA, and that children and the spouse of the decedent such as Kyle, Sam, and Olivera are all within the zone of interests FCRA was designed to protect and it was reasonably foreseeable that they would be damaged as a result of the terrible discriminatory acts on the part of the Defendants. *See Estate of Michael Cimino v. American Airlines, Inc.*, 183 So. 3d 1242 (Fla. 4th DCA 2016).

13.     The individuals who were employed by the Defendant, as set forth below in detail, were agents of the Defendant and their actions bind the Defendant.

14.     At all times material to this action, the Defendant and certain of its representatives (agents) engaged in unlawful discriminatory and retaliatory practices against Samuel I. Roig, which were motivated by Mr. Roig's age, disability, request for accommodations, and complaints of discrimination, in violation of the Florida Civil Rights Act of 1992, failed to pay him in accordance with Florida's Constitution, Florida Const. Art. 10, § 24(c), and the Defendant subjected Kyle, Sam, and Olivera to emotional distress. At all times, the actions of the Defendants were taken against Mr. Roig to not only damage and cause him harm but also intentionally to injure and damage Olivera, Kyle, and Sam.

## STATEMENT OF FACTS

15.    Mr. Samuel I. Roig (who was disabled and was 54 years old hereinafter referred to as "Mr. Roig") was a long-time employee of the corporate Defendant (30+ years of service), who was the victim of invidious discrimination and hateful comments by Defendant O'Malley who was his supervisor for the last few months of his employment, and who was not disabled but hated the disabled.

16.    Numerous employees, including managers, knew that non-disabled managers, including but not limited to O'Malley were harassing, retaliating against, and attempting to terminate (actually terminating) Mr. Roig, and Mr. Roig informed higher management and human resources to complain about the discrimination, including in the month of April 2016. At all material times, the Defendants had a duty to the Plaintiffs to refrain from creating an unreasonable risk of harm to them, which duty Defendants breached by subjecting Mr. Roig to abuse, harassment, and bullying in an attempt to cause physical harm to Mr. Roig including his death, which they ultimately successfully accomplished.

17.    O'Malley, in a pretextual attempt to terminate Mr. Roig, falsely accused him of walking too slowly to perform his job, and also commented on Mr. Roig shaking from taking medication pertaining to his back injury, and denied him a team bonus that was awarded to every single person on Mr. Roig's team, except for Mr. Roig who headed the team, which bonus was denied without any legitimate business reason. Defendant Seguin and Juan Vicente knew about all of this. O'Malley repeatedly commented in Puerto Rico that Roig was walking too slowly (Mr. Roig's movements were slowed because of recent back surgery and Defendant O'Malley).

18.     Up until the period of time Mr. Roig worked under Mr. O'Malley, Mr. Roig had a 30+ year history with UPS and was not accused of things that Mr. O'Malley falsely accused him of, and .

19.     These horrible, false, outrageous statements and threats made to Mr. Roig caused Mr. Roig to fall into a great depression (which was witnessed by and apparent to many individuals employed by Defendant) and eventually led to his death in the office while at work, and unfortunately, Sam had to identify the body and Olivera had to view the dead body in Broward County, and Kyle was told about her father's death shortly after it occurred, all of which are traumatizing events.  At all times, the Defendants were acting in a manner toward Mr. Roig that made them aware or they should have been aware that it was reasonably foreseeable that Mr. Roig was going to die while at work, and the Defendants had a specific duty of care as the employer of Mr. Roig and as operators of their EAP program (Employee Assistance Program) which has as its main duty the protection of employees' and their families mental and physical health to ensure the safety and well-being of Roig.

20.     As one can imagine, the pain and grief that the entire family is going through, and the emotional distress that they have suffered, is significant and severe.

21.     Mr. Roig was a manager with the corporate Defendant supervised by Defendant O'Malley, and had that job for many years.

22.     Mr. Roig oversaw many employees in his department.

23.     He received favorable reviews and was well liked by all of his co-workers.

24.     Mr. Roig's personnel file and company records are replete with upper-level management affirmations, excellent reviews and significant praise from his co-workers. Prior to O'Malley learning of Roig's disabilities, Mr. Roig's record at UPS reflected a model employee.

25.     On July 1985, Roig began his career as a UPS package delivery driver at Mayagüez Center, Puerto Rico.

26.     In 1987, Roig was promoted to package delivery full-time supervisor at Mayagüez Center, Puerto Rico.

28.     In 1988, Roig was promoted to operations center manager at Mayagüez Center, Puerto Rico.

29.     In February 1989, Roig met his future wife, Olivera, at UPS; Olivera was a part-time supervisor in the industrial engineer department, they were married a couple years later.

30.     In 1990, Roig was promoted as operations center manager of Arecibo, Mayagüez, and Ponce.

31.     In 1991, Roig was promoted as operations center manager of Bayamón, Caguas, Carolina, and San Juan.

32.     In 1992, Roig was promoted as operations center manager of the entire Puerto Rico operation, which included 7 operations centers; travel to the United States mainland was now required.

33.     On May 19, 1993, Kyle was born.

34.     In June 1993, Roig was assigned to West Virginia for a month for UPS management training. Travel required.

35.     On July 12, 1994, Samuel I. Roig III was born.

36.     In July 1996, Roig was relocated to Defendant's Miami Lakes office in Miami, Florida to learn more about management for promotion purpose; this position required travel.

37.     In December 1996, Roig was promoted to Puerto Rico and Caribbean country division manager; grade 18 on pay scale.

38.     After being transferred to Puerto Rico in 1998, Roig coordinated major preventive operations to protect all Puerto Rico operations centers and employees due to the imminent passing of Hurricane George, and reestablished operations after Hurricane George passed in September 1998.

39.     In October 1998, the Defendant recognized Roig and awarded him for record-time of reestablishment of UPS Puerto Rico operations after major hurricane.

40.     By July 1999, Roig was managing a staff consisting of 1,000 employees.

41.     In August 2001, Roig was promoted to country manager of Brazil, Argentina, and Chile (MERCOSUR); grade 19 on pay scale; if he corrected the errors of the 5+ country managers before him, he would be promoted to grade 20 on pay scale (division manager).

42.     In January 2002, Roig moved to São Paulo, Brazil as country manager; travel required.

43.     In April 2002, Defendant recognized Roig for his outstanding performance in managing Brazil, Argentina, and Chile.

44.     In a meeting, the UPS corporate manager praised him in front of 5 former Brazil country and region managers and staff.

45.     On November 28, 2002, Defendant relocated Roig to Miami air service center; in charge of LATAM (Latin America) region gateways including Central America, South America, and Miami center hub; travel required.

46.     In January 2004, Roig became division manager in charge of Miami air service center operations and compliance of Central America, South America, and Caribbean gateways and Miami hub; travel required.

47.     In January 2004, Defendant forced Roig to travel to Central America, South America, and Caribbean gateways via UPS plane jumpseats in non-ergonomic chairs as opposed to commercial flights in order to save money for UPS.

48.     On July 10, 2005, Roig celebrated his 20-year anniversary working for UPS; age: 44 years old.

49.     On July 10, 2010, Roig celebrated his 25-year anniversary working for UPS; age: 49 years old.

50.     In May 2013, Roig complained to Defendant about strong, severe lower back pain, which interfered with his daily tasks, though after such complaint, Defendant still forced him to travel via jumpseat to save the company money.

51.     In July 2013, Roig was examined by Dr. Alan Testa, a chiropractor, to start treatment for his strong severe lower back pain.

52.     In January 2014, it became clear that the chiropractor treatment was insufficient, so Roig went to back specialist orthopedic surgeon, Dr. Kenneth Jarolem, to obtain a diagnosis.

53.     In January 2014, Defendant recognized Roig at the corporate level for his outstanding performance on gateway audits and compliances.

54.     On February 20, 2014, after Roig underwent an MRI, Roig was diagnosed with degenerative dextroscoliosis centered at L3, disc space narrowing from L2-3 through L5-S1 with prevertebral spondylosis and Schmorl's node formation; there was a disc desiccation with Schmorl's node formation from T11-T12 through L1-2. There was a type 1 degenerative endplate changes present L3-L4 more prominent on the left and at L5-S1. Also, on L3-L4, osteophytic ridging with prominent left foraminal and lateral disc osteophyte and moderate facet joint and ligament flavum hypertrophy with moderate spinal canal stenosis and moderate to

11

severe left neural foraminal narrowing with impingement of the existing left L3 nerve root by the disc osteophyte. L4-5 findings: Check MRI result (February 20, 2014).

55.     In March 2014, the Defendant required Roig to walk everyday across Miami gateway ramp and hub and air cargo zones, and also required to travel via jumpseat to save company money.

56.     Roig performed work duties with diagnosed degenerative severe lower back pain; Roig's pain was described as unbearable such that walking was difficult.

57.     Defendant O'Malley notified of condition and did not offer reasonable accommodations at work, Roig asked for an ergonomic chair and a golf cart to alleviate the need to walk such long instances so often.

58.     Defendant's Miami gateway staff noted the difficulty with which Roig walked; Roig needed constant breaks between periods of walking.

59.     On March 24, 2014, Roig underwent his first lower back surgery Inject Spine L/S CD by Dr. Benjamin Parish, anesthesiologist at Memorial Same Day Surgery Center.

60.     On March 26, 2014, Roig reported back to work after the surgery.

61.     In April 2014, Roig continued to suffer from lower back pain.

62.     On June 19, 2014, Roig underwent a second lower back surgery Inject Spine L/S CD by Dr. Benjamin Parish, anesthesiologist at Memorial Same Day Surgery Center.

63.     By July 2014, unfortunately, Roig's severe lower back pain persisted and was reflected in daily tasks, for example, walking for him was painful, difficult and embarrassing.

64.     On July 8, 2014, Roig underwent a third lower back surgery Inject Spine L/S CD by Dr. Benjamin Parish, anesthesiologist at Memorial Same Day Surgery Center.

65. On July 9, 2014, Roig requested authorization to buy golf carts to perform work duties due to difficulty walking, but Defendant denied the request unnecessarily, and at this time, Roig also requested an ergonomic chair for his office, but the request for the chair was ignored, as well; both of these were requests for a reasonable accommodation.

66. On July 10, 2014, Roig celebrated his 29 anniversary working for the Defendant; 53 years old.

67. On November 3, 2014, Roig consulted Dr. Greg Zorman, a neurosurgeon; Dr. Zorman was the Memorial Neuroscience Institute Chief of Neurosurger, and Roig sought him for his persistent severe lower back pain.

68. At the time, Roig complained that the condition worsened and had irradiated to his hips, buttocks, thighs, calves, and feet; he complained of foot numbness on right leg.

69. By November 7, 2014, Roig became depressed and binged on alcohol nightly in order to ease severe lower back pain that had spread to lower body parts.

70. On January 2015, Roig's extreme alcohol consumption persisted; nothing sufficiently eased pain, and the quality of life deteriorated severely.

71. On January 20, 2015, Roig consulted Dr. Greg Zorman on his condition and treatment recommendations.

72. In February 2015, Roig continued to work and execute daily tasks in spite of deteriorating health.

73. In March 2015, Roig applied for temporary disabled person parking identification permit; application was approved; Roig's pride was wounded for having to admit his disabled state.

13

74.    On March 1, 2015, Roig was admitted to Memorial Pembroke Hospital for severe alcohol intoxication.  O'Malley and Vicente on March 2, 2015 questioned his alcohol addiction and Ms. Roig had to text a picture of Mr. Roig lying in the hospital bed to O'Malley and Vicente because they demanded that he report to work immediately.

75.    On March 3, 2015, Roig was discharged from Memorial Pembroke Hospital and consented to begin outpatient therapy for alcoholism treatment.

76.    On March 4, 2015, Roig had a meeting with Defendant O'Malley, who discussed alleged attendance and performance issues of Roig and noted them in Roig's employee profile, but Roig did not have attendance and performance problems, but rather merely needed FMLA leave and accommodations to deal his health problems, of which O'Malley was aware.

77.    On April 23, 2015, Roig visited Dr. Greg Zorman, neurosurgeon, and the doctor recommended another MRI in order to better ascertain how much his chronic condition had deteriorated in case of future surgery to ease pain in lower back, thighs, hips, calves, and feet; Roig still had numbness which spread to his left foot, and made it difficult for him to walk long distances; Defendant's employees asked Roig why he was so visibly suffering as he walked performing his work duties.

78.    On May 1, 2015, Roig had meeting with Defendant O'Malley; Defendant O'Malley discussed alleged attendance and performance issues of Roig and noted them in Roig's employee profile that O'Malley said that if the alleged deficient work performance and attendance issues were not addressed by Roig, he would not recommend that Roig get MIPs bonuses and pay increase; Roig had no real issues, just needed some FMLA leave to take time to see doctors and he needed the reasonable accommodations that he had requested.

14

79.     On May 3, 2015, Roig performed work duties as well as he could within the limits brought upon by his severe lower back pain and subsequent excess alcohol consumption and difficulty walking.

80.     On May 13, 2015, Roig underwent a MRI authorized by Dr. Greg Zorman, neurosurgeon.

81.     On June 4, 2015, Roig was examined by Dr. Greg Zorman, neurosurgeon, who recommended lower back surgery to ease pain in lower back, hips, thighs, calves, and feet, and who explained that surgery would ease pain but only retard degeneration of chronic condition, not cure it.

82.     On June 11, 2015, Roig underwent back injections "Inject Spine L/S CD" by Dr. Benjamin Parish, anesthesiologist at Memorial Same Day Surgery Center.

83.     On July 10, 2015, Roig was admitted to Memorial Regional Hospital and underwent lower back surgery performed by Dr. Greg Zorman, neurosurgeon.

84.     On July 10, 2015, Roig celebrated his 30th anniversary working for the Defendant; 54 years old.

85.     Regarding Roig's 30th anniversary. in July 2015, Roig received a certificate of recognition "in grateful appreciation for 30 years of dedicated service – 2015." The document illustrates dedicated service, including in the year 2015, contradicting claims of poor job performance in 2015 by Defendant O'Malley later. The certificate was signed by O'Malley's superior, Romaine Seguin, RS, President UPS International, Inc., Americas Region.

86.     The subsequent claims by Defendant that Roig was not properly performing his job can be refuted by two employees who worked under Roig, Mark Labasco and Guillermo

Álvarez, as they can attest to Roig's good job performance and the duties hindered by his lumbar spinal stenosis disability (degenerative).

87.     On July 13, 2015, Roig was discharged from Memorial Regional Hospital to recover, but he was not allowed to apply for work short-term disability.

88.     Defendant clearly knew about the disabilities, for example, in the email Roig sent to O'Malley on August 20, 2015, Roig stated, "There were days that I could barely walk but I was working in my office. Even now I'm still coming having pain in my lower back." This came with a clear request for reasonable accommodations for Roig's lumbar spinal stenosis disability (degenerative) in email to O'Malley on August 20, 2015.

89.     In same email, Roig told O'Malley that O'Malley's statement that Roig was not in pain on the days Roig allegedly missed work was "not correct." Roig goes on to say, "… the only person who was suffering and feeling the pain was me." In the email, Roig respectfully confronted O'Malley about his "incorrect" dismissal of his back pain and goes on to defend himself by detailing how he works despite his back pain. He goes on to say, "I have been a solid employee for 30 years and it is not my fault that my health has deteriorated this year." This quote implies that Roig feels persecuted and at fault for a condition that he cannot control. In the email, Roig feels the need to defend himself at work against treatment that he views as unfair or unjustified given his lumbar spinal stenosis (degenerative).

90.     Roig similarly informed O'Malley that he can barely walk while working in his office. For perspective, he had to travel around a ramp that is 14.84 acres or 646430 square feet, with 9 aircraft parking positions to effectively perform his duties.

91.     On August 22, 2015, Roig was admitted voluntarily to Memorial Pembroke Hospital and underwent alcoholism detoxification treatment. In August 2015, Roig sent an email

16

complaining about back pain and met with O'Malley and Mr. Roig was in tears and complained that Defendants wanted to cause his death in the office, a prescient observation because later that is what happened; in fact, Roig said loudly to O'Malley and Vicente that you are going to take me out of here dead.

92.     On August 25, 2015, Roig reported back to work.

93.     By September 2015, Roig started to obtain partial relief from the lower back surgery, but Roig developed degenerative lumbar stenosis, arthritis, and bone spurs, which are very serious chronic conditions that eventually would lead to loss of his lower extremities.

94.     From this point on, Roig's quality of life was cyclical, governed by vacillating between good days and bad days; overall difficult to wake up and go to work.

95.     On September 22, 2015, Roig requested work short-term disability and was admitted to a Sunrise, Florida Detox Center for alcoholism.  On this same day, Olivera texted Vicente and stated Roig's situation is an emergency and needs to be admitted to a facility and Aetna (the insurance company) would not process it.

96.     On September 27, 2015, Roig was admitted to Addiction Solution Center for a 30-day rehabilitation program to treat alcoholism.

97.     On October 26, 2015, Roig was discharged from Addiction Solution Center, but his severe lower back pain was still present, as well as his difficulty walking; however, his mood was good and he had an eagerness to work again.  During September 27 – October 26, 2015, Roig worked those weeks but was paid no compensation for that work by the corporate Defendant, but the corporate Defendant, Defendant O'Malley, and Vicente knew Roig was performing work, except for the period October 18 – 24, 2015, Roig was paid at the least the minimum wage for that week.  Roig's work from September 27 – October 26, 2015 consisted of

communicating with his staff at the gateway and Mark Labasco. Defendant O'Malley acknowledged in an email dated September 25, 2015 that Roig's Latin American region "is a great region and has demonstrated best in class results for the last years", which proves Defendant O'Malley knew Roig was performing his job adequately.

98.     On October 27, 2015, Roig reported for work, and was in a good mood and had drive to work again. On or about November 16, 2015, Roig went to a medical doctor (his cardiologist) because of stressful encounters at work which were causing Roig's heart to pound in his chest and caused Roig to feel pain pressure on his chest, pains in the neck and head, and other symptoms of cardiological distress/injury. The cardiologist concluded that Roig's cardiological conditions were due to the Defendants.

99.     On January 7, 2016, Roig had a meeting with Defendant O'Malley, and Roig reported his work progress for the past 6 months (July-December 2015), and Roig reported that he had outstanding numbers in the division that he managed, which was true, and thus Roig asked for Defendant O'Malley's recommendation of the MIPs Bonus, but O'Malley answered with a vague answer: "We'll see."

100.    Roig's entire team that he supervised (each individual) received the MIPs Bonus from Defendant O'Malley.

101.    In March 2016, Roig had a meeting with Defendant O'Malley; they talked about whether Roig would receive MIPs bonus and pay increase; Defendant O'Malley said that Roig's performance was poor in 2015 and thus he may not recommend Roig for either the MIPs bonus or the pay increase, which was the first time in the 31 years of Roig's career with Defendant that he has been discriminated for his disabilities (chronic health issues impacting his ability to walk) and for requesting a reasonable accommodation; Defendant never provided proper

accommodations for Roig's chronic lower back condition and alcoholism, as no ergonomic chair, no golf cart, etc.

102.    On April 8, 2016, Roig recommended MIPs bonuses and pay increases for his employees, because the numbers the team achieved warranted it; Roig was hurt that his employees received these while he did not, when he managed them and was ultimately responsible for the numbers.

103.    Roig was devastated and anguished because his employees receiving MIPs bonuses and pay increases clearly showed that Roig should have received them as well, and would have except for the discrimination because of his age and disabilities.

104.    On April 25, 2016, Roig attended a meeting with human resources director Juan Vicente; they talked about Roig's retirement options, which were brought up unsolicited by Vicente; Roig told Vicente that it was a stab in the heart and the most embarrassing moment in his life to not receive the MIPs Bonus and pay increase only because of his age and chronic health issues, and thus constituted retaliation for Roig complaining about discrimination and were thus the Defendant was violating both FCRA and the FWA; Roig was severely distraught and depressed over this and Vicente and O'Malley knew it.  Roig kept telling O'Malley and Vicente that his body could not take it anymore.

105.    The age discrimination claim pertains in part to discrimination based on Roig's approaching retirement eligibility in 2015; Roig exhibited excellent job performance until suddenly in 2015, the Defendant tried to portray Roig as someone who was supposedly plagued with poor job performance while his employees performed well enough to receive stock MIP incentives while Roig, the individual supervising those employees, did not.

106.    On April 26, 2016, Roig reported to work in the morning; Roig talked to his wife to check if the pay check stub reflected a pay increase, but it did not, which anguished him further.

107.    Defendant's discrimination brought about severe distress. Roig was deeply damaged to the core in a moment in his life when he was spiraling downward from his disabilities (chronic health issues).

108.    Roig died in the morning at 11:15 a.m. in his office of sudden cardiac arrest, brought on by Defendant's intentional discrimination of him and subjection to emotional distress, and Defendant knew or should have known that the discrimination and tortious actions it was perpetrating on Roig would lead to his death (in other words, the manner in which the Defendants treated Roig was reasonably foreseeable to lead to the death of Roig from sudden cardiac arrest).

109.    Roig died in front of his staff, having vomited blood and laid semi-conscious on the floor in fetal position in his office at Defendant's place of employment, just before a work-related conference call he was supposed to have.

110.    Roig's last words consisted of telling a supervisor to take a conference call about Chile audit results.

111.    The anguish Roig experienced in his last few years of work, especially April of 2016, contributed to his sudden death; Roig died 9 months after his lower back surgery; he died the same month he was discriminated against by Defendant for his performance in spite of his chronic, deteriorating health issues which Defendants knew were clear disabilities, and which Defendant knew simple reasonable accommodations had been requested, but Defendant refused them to make Roig's life more miserable, making it reasonable foreseeable Roig would die.

112.   UPS thrived when he was in his prime for over 30 years and stomped on him when he was spent.

113.   Sam was called and told about his father's death and had to identify the body, which was a traumatizing event.   Thereafter, the body was transferred and taken to Broward County, Florida where Olivera had to view it, which was a traumatizing event.   Valerie Santiago, at the time an employee of the corporate Defendant who rode in the ambulance with Roig's body, asked Sam to provide the homicide report and for the police officer's contact information who issued the report, which Sam thought was very distasteful.

114.   Roig was discriminated for his lumbar spinal stenosis disability (degenerative) and his age by Defendant O'Malley as evident in the way O'Malley harassed Roig from 2015-2016, when Roig experienced his lumbar spinal stenosis disability (degenerative) and was one year away from retirement. The following is evidence of harassment.

- Roig stated that O'Malley dismissed his back pain on alleged missed work days

- O'Malley requested that Roig properly prepare a report detailing a ramp crash properly. Multiple edits were done and none were accepted by O'Malley. O'Malley does not address what he desires, he leaves it up to Roig to figure out what he wants. This is unnecessary pressure that makes for a hostile work environment.  The penultimate edit to the report was presented to O'Malley by Roig and O'Malley rejected it. The same, unedited report was presented to O'Malley by Mark Labasco and it was accepted. This shows a double standard. Mark Labasco can attest to this incident.

- O'Malley similarly requested that a powerpoint be redone multiple times. Guillermo Álvarez can attest to this incident.

115.   Reasonable accommodations were not provided even though O'Malley was notified via an email and lumbar surgery leave.

  o Roig told O'Malley in the August 20, 2015 email the following. "There were days that I could barely walk but I was working in my

office. Even now I'm still coming having pain in my lower back."
This was a request for reasonable accommodations. None were
provided.

o Roig was left to barely walk around a 14.84-acre ramp to perform
his job duties.

o Roig was also forced to fly jumpseat (i.e., with pilots in UPS
airplanes in an unergonomic chair) instead of commercial to save
the company money.  O'Malley would fly commercial at times.
This is a double standard.

o Roig was not given a flexible work schedule. Instead, he was
specially monitored by his fellow division manager, Valerie
Santiago, with an employee under her supervision and security
cameras set up near his office to make sure Roig stayed in his
office until 4:00 pm on work days. Mark Labasco and Guillermo
Álvarez can attest to this.

o Roig asked for a more ergonomic chair for his office. He never
obtained the chair.

Roig had back problems that made it very difficult to walk up the stairs to get to his business

office from the ramp, and he asked Defendants for a reasonable accommodation to have the

elevator fixed, but Defendants refused.  O'Malley harassed Roig about dates.

o O'Malley reprimanded Roig for responding with "inaccurate dates"
in email subject lines in a May 6, 2015 email.  O'Malley goes on to
say the following. "Maybe you don't think the inaccurate dates are
a big deal, or maybe you edited the dates for convenience, or you
misunderstood the dates I requested (even though I think I said
them 3 times), or maybe you accidentally inverted the dates on the
email, obfuscating, or maybe you didn't hear me clearly, or
whatever."

▪ O'Malley reprimands Roig with disdain over how Roig
wrote dates in an email subject line while in Exhibit D of
the Respondent's Position Statement, O'Malley states the
following typo. "On May 28, 2105." O'Malley is
reprimanding Roig with disdain over date mistakes that he
later then makes in a company document. This shows a
double standard.

22

- o O'Malley making fun of Roig.

  - ▪ In the same May 6, 2015 email, O'Malley makes fun of Roig when he states the following. "At a higher level, this is an ongoing issue that I have with you. When I speak with you, you frequently respond with HUH, or What, or can you repeat it… Or u simply misunderstand and I receive an answer unrelated to whatever the topic is…" O'Malley makes fun of how Roig speaks to him when he states "HUH", "What" and such. Before 2015, this was never a problem.

- o Mark Labasco states that Roig told him that O'Malley was picking on him.

  - ▪ Roig told Labasco that O'Malley made him feel like he could never do anything right after O'Malley learned Roig was disabled (as with the ramp crash report done multiple times).

  - ▪ Labasco also states that Roig was told by Juan Vicente to either resign or sign the "poor job performance" document.

  - ▪ Labasco was told by Roig that he was forced to sign "poor job performance" documents or else resign.

- o Guillermo Álvarez states that O'Malley was pressuring Roig in a hostile way; that Roig was on O'Malley's bad side simply because he was disabled.

116.    Roig was suffering from the effects of the emotional distress so badly that a couple months before his death, that he turned to Jose Acosta, a former supervisor, for assistance, and Acosta after speaking to Roig and understanding his weakened mental and physical states became so worried about Roig that he contacted Kyle in Mexico while she was at a golf tournament to call him, to address the downward spiral of Roig's deteriorating mental and physical health. Acosta actually saw Roig crying in the hallway at work and discussed the situation with Roig, who stated it was O'Malley and Vicente.  Valerie was fired for harassment

by the corporate Defendant.   After Roig's death, Guillermo Alvarez resigned because the Defendants were pressuring him to talk badly about Roig to defend the inevitable legal action that would result from Defendants' actions toward the Plaintiffs.   Alvarez refused to lie for the Defendants to help their defense of the instant case.   The Defendant terminated Roig because of his age, disabilities, and/or his complaints of discrimination (and opposition to Defendants' refusals of his requests for reasonable accommodations) in violation of *Florida Statutes* § 760.01 *et seq.*, and his complaints for not being paid in accordance with Florida's Constitution, Florida Const. Art. 10, § 24(c).   During several weeks in 2014-16 that Roig was hospitalized or institutionalized receiving no pay, he actually worked fielding phone calls, texts, and emails from his hospital bed/room, and O'Malley and Vicente both knew that Roig was doing this, and both know that Roig was receiving no pay for his work in violation of Florida's Constitution, Florida Const. Art. 10, § 24(c).   Vicente and O'Malley were both aware of everything contemporaneously when it happened or very shortly thereafter that is included in ¶¶ 14-116.

117.    This suit is being filed by the personal representative of the Estate of Roig on behalf of the estate, and is also being filed in Olivera's capacity as the surviving spouse of Roig, and by Kyle and Sam.

118.    Mr. Roig always performed his job well for the corporate Defendant and thus did not perform it poorly.

119.    Ms. Roig is seeking to recover against the Defendants for the pain and suffering that she endured as a result of the Defendant's discrimination toward Mr. Roig; Roig's death which occurred in the workplace was supposed to be reported to OSHA, but it was not.

120.    Mr. Roig was discriminated against by the Defendants because of his age and/or disabilities, by the Defendant's highest levels of management.

121.    There was and is no legitimate business reason to discriminate against Mr. Roig in the manner in which the Defendants did.

122.    Despite the fact that Roig made numerous requests for reasonable accommodation, and that it became clear without them Roig would die, Defendant intentionally caused Roig's death because of Mr. Roig's age and/or disabilities and/or complaints of discrimination, and Defendants wrongly caused the death of Roig.  Mr. Roig made requests for his reasonable accommodations up until the time of his death.

123.    The Defendant's actions are in violation of *Florida Statutes* § 760.01 *et seq.* None of the alleged aforementioned actions constitute an accident in the workplace and physical harm Mr. Roig suffered does not constitute a personal injury arising from an accident in workplace.  The injuries to Mr. Roig were not the result of an unexpected or unusual event, but rather were intended by the individual Defendant, and thus vicariously through the agency relation the corporate Defendant.  The Defendants' and the corporate Defendant's agents' actions constitute the infliction of emotional distress grossly negligently/recklessly/intentionally under such circumstances that a reasonably prudent person would characterize them as outrageous, and the torts arose from an act constituting age and/or disability discrimination/retaliation which is a scenario involving an injury to intangible personal rights.  Defendants' actors were acting in such a way as to believe they were benefiting the corporate Defendant by their actions, and their conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendant, that the corporate Defendant knew or should have known of the conduct.  The corporate Defendant, however, failed to take any appropriate action to remedy, correct, or prevent Defendant actors' conduct.  Consequently, the corporate Defendant is vicariously responsible for the conduct of its agents.

124.    Olivera, The Estate, Kyle, and Sam have retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay counsel a reasonable fee for their services. Kyle Roig was seeking a professional golf career, and was a successful collegiate player at UCLA on scholarship, and beat Jaye Marie Green (a current LPGA tour player) at a tournament in Orlando. Roig was her caddy, and helped her tremendously with her game. Vicente and O'Malley knew that about Kyle's career and Roig's involvement and knew that Kyle's professional golf success was dependent upon Roig's health, but they continued their tortious actions toward Roig knowing that their actions were interfering with Roig's ability to assist Kyle and knowing that their actions were highly likely to cause Roig's death, and were the cause of Roig's death. Immediately after Roig's death, Kyle developed the "yips" with her putting, developed a sharp hook in her golf swing (particularly off the tee), both of which are physical ailments, and every tournament to which she went was bombarded with "Where's Sammy [Roig]?", which caused her to have to perpetually repeat that her dad was deceased—"Where's Sammy [Roig]?" would be asked because Kyle, at every golf tournament she played in was never without Roig, who was her caddy, her coach, and confidant. Almost every time she was asked "Where's Sammy [Roig]?" she would start crying. In 2011, Roig reached #2 on the World Amateur Golfweek Rankings and finished ranked 4th WAGR in 2012. Kyle was ranked the #1 player in the Caribbean from junior golf, to amateur, and the professional circuit. At 18, Roig placed top 20 in the first two stages of the LPGA Qualifying School, but forewent the opportunity to gain her LPGA card in order to attend UCLA. Recorded 23 straight rounds under par in high school golf in 2011. Averaged 68.4 my Senior Year at American Heritage Won 6 State Championship Rings at American Heritage (2 Individual State Championships & 4 Team State Championships). After Roig's death, Kyle went all the way down to 1000 in the Rolex World Rankings as a Pro after 2016. Kyle questions

whether she will be able to compete competitively in professional golf ever again, in light of Roig's death, and has seen mental professionals to try to deal with the loss, and what that loss means to her golfing career, which apparently has ended it. Kyle has had to withdraw from many golf tournaments because of Roig's death. Defendant Seguin was aware of the facts and circumstances in this statement of facts section because Defendant O'Malley told Seguin all of the allegations contained herein. Defendant Seguin did not intervene and allowed and enabled Defendant O'Malley to wage his campaign of discrimination (wrongful conduct) on Mr. Roig.

125.    Olivera, The Estate, Kyle, and Sam are entitled to their reasonable attorneys' fees if they are the prevailing party(s) in this action.

## COUNT I

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – DEATH CLAIM

126.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth. This Count is brought only against the corporate Defendant and is brought by The Estate.

127.    Defendant discriminated against Mr. Roig with respect to his employment by allowing Mr. Roig's age and/or disabilities and/or complaints of discrimination/requests for reasonable accommodation (protected activities—some of which were made in April 2016) to be the cause of his death.

128.    Defendant's actions violate the Florida Civil Rights Act of 1992, and specifically *Florida Statutes* § 760.10, by causing Roig's death, by allowing his age and/or disabilities and/or protected activities to be a cause of his death.

129.    As a direct and proximate result of the intentional and premeditated violation of the Florida Civil Rights Act by the Defendant with respect to its causing his death of him, by

discriminating against him by allowing his age and/or disabilities and/or retaliating against him because of protected activities, The Estate has been damaged.

130.    The Estate's damages include loss of work, humiliation, emotional pain, distress, depression, inconvenience, loss of his self-esteem, loss of dignity, loss of enjoyment of life, loss of back pay, loss of front pay, loss of bonuses, fringe and retirement benefits, lost future earnings capacity, and punitive damages.

WHEREFORE, as to Count I, The Estate respectfully requests that this Court:

(a)    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)    Order Defendant to make The Estate whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)    Order Defendant to make The Estate whole by providing compensation for future pecuniary losses, including front pay, in amounts to be proven at trial.

(d)    Order Defendant to make The Estate whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)    Order Defendant to pay The Estate punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(f)    Order Defendant to make The Estate whole by compensating it for lost future earnings capacity.

(g)     Award The Estate its attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper.

## COUNT II

## VIOLATION OF FCRA - TERMS AND CONDITIONS OF EMPLOYMENT

131.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth.  This Count is brought only against the corporate Defendant and is brought by The Estate.

132.    Defendant has intentionally engaged in unlawful employment practices and discrimination, in violation of FCRA, by allowing Mr. Roig's age and/or disabilities and/or complaints of discrimination to be a motivating factor for, among other things, terminating Mr. Roig and failing to give Mr. Roig his MIPs bonus and raise in pay in early 2016.

133.    The effect of the practices complained of above has been to deprive Mr. Roig of equal employment opportunities, and otherwise adversely affect his status as an employee, by allowing his age and/or disabilities to be a motivating factor for Defendant's actions.

134.    As a direct and proximate result of the intentional violations by Defendant of Mr. Roig's rights under FCRA, by discriminating against Mr. Roig, The Estate has been damaged. Its damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

WHEREFORE, as to Count II, The Estate respectfully requests that this Court:

(a)     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)     Order Defendant to make The Estate whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)     Order Defendant to make The Estate whole by providing compensation for future pecuniary losses, including front pay, in amounts to be proven at trial.

(d)     Order Defendant to make The Estate whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)     Order Defendant to pay The Estate punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(f)     Order Defendant to make The Estate whole by compensating it for lost future earnings capacity.

(g)     Award The Estate its attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper.

## COUNT III

## VIOLATION OF FCRA – REASONABLE ACCOMMODATION

135.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth.  This Count is brought only against the corporate Defendant and is brought by The Estate.

136.    Defendant discriminated against Roig with respect to his employment by failing to provide a reasonable accommodation to Roig, as set forth more fully above (e.g., ergonomic chair,

flying commercial, provision of a golf cart, require less walking, and doctor's visits, and the termination of his employment constitutes a failure to accommodate).

137.    Defendant's actions violate the Florida Civil Rights Act of 1992, and specifically *Florida Statutes* § 760.10, by refusing to provide a reasonable accommodation(s) to Roig, despite his request for such accommodation.

138.    As a direct and proximate result of the intentional and premeditated violation of the Florida Civil Rights Act by the Defendant with respect to its failure to provide him a reasonable accommodation, which is a form of disability discrimination, Roig and now The Estate have been damaged.

139.    Roig and The Estate's damages include loss of work, humiliation, emotional pain, distress, depression, inconvenience, loss of her self-esteem, loss of dignity, loss of enjoyment of life, loss of back pay, loss of front pay, loss of bonuses, lost future earnings capacity, and punitive damages.

WHEREFORE, as to all Count III, The Estate respectfully requests that this Court:

(a)    Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)    Order Defendants to make The Estate whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)    Order Defendants to make The Estate whole by providing compensation for future pecuniary losses, including front pay, in amounts to be proven at trial.

(d)     Order Defendants to make The Estate whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)     Order Defendants to pay The Estate punitive damages for their malicious and/or reckless conduct, in amounts to be proven at trial.

(f)     Order Defendants to make The Estate whole by compensating it for lost future earnings capacity.

(g)     Award The Estate its attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper

## COUNT IV

## GROSSLY NEGLIGENT/RECKLESS INFLICTION OF EMOTIONAL DISTRESS (by The Estate)

140.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth.  This cause is brought against all Defendants.

141.    Defendants had a duty to refrain from causing an unreasonable risk of harm to Mr. Roig that their actions might cause him either emotional or physical pain or both, and this duty is further buttressed by FCRA which prohibits employment discrimination, and thus the Defendants have a duty not to engage in employment discrimination that is statutory in Florida.  Defendant's causing or allowing Mr. Roig to die while at work in such a manner as to instigate and cause his death, such as by threatening Mr. Roig with denial of a rightly earned bonus and raise in pay, denying him accommodations, making him work while in the hospital and in rehab without pay, to destroy him as a person were outrageous acts, which were done willfully and wantonly, particularly when it was known by Defendants that Roig was a superior performer, and when his age and/or disabilities were motivating factors for such behavior and when all Defendants knew he was in a

weakened state and in a state in which he may in fact die from the level of stress that the Defendants were putting on Mr. Roig. Defendants' actions were going to cause Roig to lose his lower extremities, and Defendants knew that, and knew that Mr. Roig knew that and was suffering severe emotional distress from that. Defendants' actions were particularly invidious because they were motivated by intentional discrimination that is prohibited by statute. The Defendants, as described above, created and maintained an EAP for the specific purpose of providing employees and former employees like Mr. Roig and their family members (Olivera and Kyle and Sam) a mechanism to raise any concerns of physical or mental health and to properly address those concerns, thus voluntarily creating a specific duty on the part of the Defendants in this regard. Defendants O'Malley and Seguin never suggested to Roig that he obtain help through EAP, because they did not want him receiving any mental health assistance.

142. Defendants' causing or allowing Mr. Roig to be threatened with loss of bonus and raise and to be denied all reasonable accommodation and putting him in the situation where he is going to lose his lower extremities, and blocking him from EAP assistance, etc. to destroy him as a person, caused Mr. Roig to endure severe emotional distress, which emotional distress caused him to die all of which constitutes a breach of the specific duty created by the Defendants with respect to the formation of its EAP, the requirement that Defendant O'Malley and Seguin refer him there when it was obvious to them they should have (but they did not), and a breach of their duty to avoid the creation of an unreasonable risk of harm to Roig (Defendants creation of an unreasonable risk of harm to Roig caused Roig's death). As examples of the severe mental and emotional distress that Roig endured from the breach of Defendants' duty to them,

a. Roig experienced depression, withdrawal from society, serious panic attacks, lack of sleep, despondency, and loss of appetite.

b.      Roig has also suffered gastroenterological issues such as severe stomach disorders, headaches, and physical pain, caused by the emotional stress placed upon him by the Defendants, as he thought he was going to lose his lower extremities and he thought he was going to die.

143.    Defendants' actions constitute the grossly negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous, willful, and wanton.  While Roig suffered a physical impact because of the words Defendants O'Malley and Seguin spoke to him, The Estate need not prove a physical impact because the Defendants' actions were willful and wanton and because The Estate's actual claim is solely for mental or nervous injury that arises out of fright and excitement only (though Mr. Roig suffered from several physical impacts, including the words spoken to him by O'Malley and Seguin).  What occurred to Roig was not an accident in the workplace caused by simple negligence that led to a physical injury.

144.    Defendants' actions constitute the grossly negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous, willful, and wanton.

145.    In wantonly and willfully subjecting Roig to emotional distress, Defendant O'Malley's and Seguin's conduct in committing this tort on Roig was taken at a time when O'Malley and Seguin were not acting in furtherance of the corporate Defendants' business and the tort arose from an act constituting age/disability discrimination/harassment which is a scenario involving an injury to intangible personal rights.

Defendant O'Malley's and Seguin's conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendants, that the corporate Defendants knew or should have

known of the conduct. The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent Defendants O'Malley's and Seguin's conduct, but rather ratified it. Consequently, the corporate Defendant is vicariously responsible for Defendant O'Malley's and Vicente's tortious conduct toward Roig.

WHEREFORE, as to Count V, The Estate respectfully requests that it be awarded compensatory damages, for the pain and suffering that Roig endured as a result of the intentional and outrageous acts of Defendant, and it seeks pre-judgment and post-judgment interest, and any and all other relief to which it is entitled.

## COUNT V

## WRONGFUL DEATH/SURVIVAL ACT CLAIM

146.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth. This Count is brought against all Defendants, and the wrongful death act count and the survival count are brought in the alternative.

147.    The Defendants had a duty to refrain from creating an unreasonable risk of harm to Roig by subjecting him to severe emotional distress and by wrongly, negligently, or by omission causing Mr. Roig's death. Defendants breached that duty and created an unreasonable risk of harm that Roig would be subjected to emotional distress that would cause him harm and his death, and those actions were wrongful and grossly negligent because they are inextricably intertwined with intentional age and disability discrimination that is prohibited by statute (FCRA). As set forth herein, the Defendants caused the death, negligently, of Mr. Roig, and they had a duty to refrain from acting in a manner that would have caused his death, such as by creating and operating an EAP program that Mr. Roig should have been referred to in order to control the physical and mental health issues their employees suffered from, thus giving rise to a specific duty of care toward Mr. Roig and his family members, but which program failed to take control over the mental and

physical health of the Mr. Roig knowing he was dying and in serious need for medical assistance to stop the inevitable death Defendants knew would result from their actions and inaction.  Constantly refusing to allow reasonable accommodation requests, which caused more and more physical pain, suffering, and stress, intentionally denying him a bonus and raise in pay that he earned while working under extremely adverse conditions, treating him less than human in their dealings with him in his last 2 years of employment as set forth herein, and denying him even minimum wages which are constitutionally required under Florida's Constitution, Florida Const. Art. 10, § 24(c), caused Roig's death.  The Defendants actions, particularly the actions of Defendants O'Malley and Seguin set forth above, do not constitute simple negligence but rather were willful and wanton (gross negligence or recklessness which is wrongful conduct), designed to cause severe emotional distress or even death.

148.    It is reasonably foreseeable that constantly refusing to allow reasonable accommodation requests, which caused more and more physical pain, suffering, and stress, intentionally denying him a bonus and raise in pay that he earned while working under extremely adverse conditions, may cause someone to fall into depression, suffer stress, and increase high blood pressure, of which Defendants O'Malley and Seguin were aware of Roig's chronic high blood pressure in the last year of his employment, particularly when that person is in the provider role as head of household, would cause severe emotional distress and even death to that person, here Roig (particularly when the .

149.    The Defendants breached their duty to Mr. Roig and The Estate by saying and doing things to him that Defendants knew or should have known may cause Mr. Roig to die.

150.    Because of the Defendants' negligence, as set forth above in detail, beneficiaries of The Estate have been harmed and have been damaged, and their damages include the loss of

companionship and support of Mr. Roig, pain and suffering, economic damages, and attorneys' fees.

WHEREFORE, as to all Count V (which is brought against both Defendants), The Estate respectfully requests that it be awarded on behalf of various beneficiaries compensatory damages for the pain and suffering the beneficiaries and Mr. Roig endured, economic damages for loss of support and companionship, attorneys' fees, and The Estate intends to seek punitive damages upon a hearing with the Court, and she seeks pre-judgment and post-judgment interest.

## COUNT VI

## VIOLATION OF THE WHISTLEBLOWER'S ACT - § 448.102

151.    The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 as though fully set forth.  This Count is brought solely against the corporate Defendant.

152.    Roig objected to, and refused to participate in, an activity, policy, or practice of the Defendants which is in violation of a law, rule, or regulation, as set forth more fully above.

153.    Roig objected to the Defendant's intentional violations of FCRA with regard to repeated requests for reasonable accommodations and then complaining about disability discrimination unlawful under FCRA when the reasonable accommodations were denied.

154.    Roig refused to participate in an unlawful activity, policy, and practice of the Defendant, including but not limited to the Defendant's intentional violations of the FCRA including the failure to allow reasonable accommodation.

155.    The failure of an employer to follow the laws, rules, and regulations associated with FCRA and reasonable accommodations for a disabled person, constitutes:

(a)    an activity in violation of a law, rule, or regulation; and/or is

(b)    a policy in violation of a law, rule, or regulation; and/or is

(c)     a practice in violation of a law, rule, or regulation.

156.    As a direct and proximate result of Roig's protected activity under the Florida Whistleblower Act (his complaining on about numerous violations of FCRA), and the adverse employment action the Defendant took against Roig because of Roig's protected activity, Roig has been damaged. His damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering, mental anguish, loss of enjoyment of life, punitive damages, and other non-pecuniary losses.

WHEREFORE, as to Count VI, The Estate respectfully requests that this Court:

(a)     Order the Defendant to make the Estate whole by providing compensation for past pecuniary losses including back pay, with pre-judgment interest, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(b)     Order the Defendant to make The Estate whole by providing compensation for future pecuniary losses including front pay, in amounts to be proven at trial.

(c)     Order the Defendant to make The Estate whole by providing compensation for non-pecuniary losses including emotional pain, suffering, loss of dignity, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(d)     Order Defendant to pay the Estate punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(e)     Award The Estate its attorneys' fees and costs in this action.

(f)     Written apology to The Estate.

(g)     Grant such further relief as the Court deems necessary and proper.

## COUNT VII

## GROSSLY NEGLIGENT/RECKLESS INFLICTION OF EMOTIONAL DISTRESS (Sam, Kyle, and Olivera)

157.    Sam, Kyle, and Olivera re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 125 as though fully set forth. This cause is brought against all Defendants.

158.    The actions of the Defendants within 4 years of the initial Complaint in this matter being filed (March 16, 2018) are as follows:    Defendants caused or allowed Roig to be discriminated against because of his age and/or disability, to be retaliated against because he complained about not being paid for certain hours and work performed, and caused his death through recklessness or gross negligence, putting him in fear of death and the loss of his lower extremities, and Defendants knew that he had Sam, Kyle, and Olivera, and that with Kyle's golf, Roig was a significant part of her success, were outrageous acts, acts which were willful and wanton (grossly negligent or reckless), acts which should not have been taken because they created an unreasonable risk of harm to Sam, Kyle, and Olivera, because it was reasonable from their actions that Sam, Kyle, and Olivera would suffer emotional distress therefrom.

159.    Defendants' recklessly causing the death of Roig caused Sam, Kyle, and Olivera to endure severe emotional distress, immediately upon the events occurring.    Defendants breached their duty to avoid the creation of an unreasonable risk of harm to Sam, Kyle, and Olivera, which was foreseeable from Defendants' conduct.

160.    Defendants' causing or allowing Mr. Roig to be threatened with loss of bonus and raise and to be denied all reasonable accommodation and putting him in the situation where he is going to lose his lower extremities, and blocking him from EAP assistance, etc. to destroy him as a person, and eventually causing Mr. Roig's death, caused Olivera, Kyle, and Sam, severe emotional distress, as well, all of which constitutes a breach of the specific duty created by the Defendants to refrain from creating an unreasonable risk of harm to Sam, Kyle, and Olivera, Defendant's breached their duty to provide EAP help to Sam, Kyle, and Olivera, because Defendants had a duty to refer

the family members to EAP so they could receive mental health assistance.  As examples of the severe mental and emotional distress that the Roigs endured from the breach of Defendants' duty to them,

a.        Olivera, Kyle, and Sam have experienced depression, withdrawal from society, serious panic attacks, lack of sleep, despondency, and loss of appetite, and Kyle's golf career as a LPGA player has been ruined.

b.        Olivera, Kyle, and Sam have also suffered gastroenterological issues such as severe stomach disorders, headaches, and physical pain, caused by the emotional stress placed upon her by the Defendants.

161.    The Plaintiffs suffered a physical impact because the traumatizing event which caused the emotional distress was the viewing of Mr. Roig's cadaver and with Kyle being called on the phone shortly after it occurred, and thus the impact was visual in nature (they arrived on the scene of a terrorizing and horrific event—the completely unnecessary death of their father and husband), which impact resulted in severe emotional distress to the Plaintiffs, which manifested itself in physical symptoms, as described above, which occurred shortly after witnessing the traumatizing event and further discussions about the death and the attendant circumstances regarding same were further traumatizing events for Olivera, Kyle, and Sam.

162.    Defendants' actions constitute the negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous.

163.    While Sam, Kyle, and Olivera suffered a physical impact as set forth above, they need not prove a physical impact because the Defendants' actions were willful and wanton and because their actual claim is solely for mental or nervous injury that arises out of fright and excitement only.

164.     Defendants' actions constitute the negligent infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous, willful, and wanton.

165.     In wantonly and willfully subjecting Sam, Kyle, and Olivera to emotional distress, Defendant Vicente and O'Malley's conduct in committing this tort on Sam, Kyle, and Olivera was taken at a time when Vicente and O'Malley were acting in a manner that makes the corporate Defendant vicariously liable.

166.     Defendant O'Malley's and Vicente's conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendant, that the corporate Defendant knew or should have known of the conduct.   The corporate Defendant, however, failed to take any appropriate action to remedy, correct, or prevent Defendant O'Malley's and Vicente's conduct.   Consequently, the corporate Defendant is vicariously responsible for Defendant O'Malley's and Vicente's tortious conduct toward Sam, Kyle, and Olivera.

WHEREFORE, as to Count VII, Sam, Kyle, and Olivera respectfully request that he be awarded compensatory damages, for the pain and suffering that she endured as a result of the intentional and outrageous acts of Defendant, and they seek pre-judgment and post-judgment interest.

## COUNT VIII

### FLORIDA CONSTITUTION Art. 10, § 24(c) Wages (All Defendants)

167.     The Estate re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 125 above as though fully set forth.  This claim is brought by The Estate against all Defendants.

168.     Within the last 3 years that Roig was employed, Roig actually worked and complained to Defendants about having to work hours for which the Defendants provided no

compensation, in violation of Florida Constitution Art. 10, § 24(c) (including time while hospitalized and in rehabilitative institutions in which he was texting, emailing, and communicating over the phone with various co-workers including Defendants), and thus Roig was not paid for certain hours worked and the Florida Constitution requires the payment at the minimum wage "for all hours worked", and states nothing about the workweek, though certain entire weeks Roig worked but was paid nothing from the Defendants.

169.    Roig was entitled to be paid at least the minimum wage for every hour and part of an hour that was worked for the Defendants, and for which the Defendants did not remunerate, but which all Defendants knew was being worked.

170.    By reason of the intentional, willful, and unlawful acts of Defendants, Roig and consequently The Estate has suffered damages, including compensatory damages, plus incurring costs and reasonable attorneys' fees.

171.    As a result of Defendant's violations of the Florida Constitution, which were not in good faith, Roig and consequently The Estate is entitled to liquidated damages.   Florida's Constitution states in pertinent part, as follows:

> (a)   PUBLIC POLICY.   All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.

> (b)   DEFINITIONS.   As used in this amendment, the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.

> (c)   MINIMUM WAGE.   Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida. Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15. On September 30th of that year and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of

inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor. Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January 1st. For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.

(d)   RETALIATION PROHIBITED.   It shall be unlawful for an Employer or any other party to discriminate in any manner or take adverse action against any person in retaliation for exercising rights protected under this amendment. Rights protected under this amendment include, but are not limited to, the right to file a complaint or inform any person about any party's alleged noncompliance with this amendment, and the right to inform any person of his or her potential rights under this amendment and to assist him or her in asserting such rights.

(e)   ENFORCEMENT.   Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs. In addition, they shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief. Any Employer or other person found liable for willfully violating this amendment shall also be subject to a fine payable to the state in the amount of $1000.00 for each violation. The state attorney general or other official designated by the state legislature may also bring a civil action to enforce this amendment. Actions to enforce this amendment shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

(f)   ADDITIONAL   LEGISLATION,   IMPLEMENTATION   AND CONSTRUCTION.   Implementing legislation is not required in order to enforce this amendment.

Florida Const. Art. 10 § 24(a-e).  Roig believed in good faith that the actions of the Defendants' as

set forth in Count VIII constituted a violation of the Florida Constitution, and his complaints about

it to the Defendants constitutes protected activity under the retaliation clause, as set forth in the next

count.

WHEREFORE, as to Count VIII, The Estate is entitled to be paid back pay, front pay, plus liquidated damages, compensatory damages, prejudgment interest, post-judgment interest, attorneys fees, and costs.

## COUNT IX

### FLORIDA CONSTITUTION Art. 10, § 24(c) Retaliation (All Defendants)

172.     Plaintiffs re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 125 above as though fully set forth.  This claim is brought by The Estate against all Defendants.

173.     Within the last 3 years of Roig's employment, Roig complained to Defendants about having to work hours for which the Defendants provided no compensation, in violation of Florida Constitution Art. 10, § 24(c) (including time while hospitalized and in rehabilitative institutions in which he was texting, emailing, and communicating over the phone with various co-workers including Defendants), and Roig's complaints were in good faith because Roig was not paid for certain hours worked and the Florida Constitution requires the payment at the minimum wage "for all hours worked", and states nothing about the workweek.

174.     Roig was entitled to be paid at least the minimum wage for every hour and part of an hour that was worked for the Defendants, and for which the Defendants did not remunerate, but which all Defendants knew was being worked, but shortly after Roig complained about having to work without being compensated at a rate of at least the minimum wage for all hours worked, Roig, Roig was terminated, and thus Roig's complaints were a motivating factor in the decision to terminate and thus his termination is in retaliation for complaints about minimum wage violations or what he reasonably perceived to be minimum wage violations.

175.   By reason of the intentional, willful, and unlawful acts of Defendants, Roig has suffered damages, including compensatory damages, plus incurring costs and reasonable attorneys' fees.

176.   As a result of Defendant's violations of the Florida Constitution, which were not in good faith, Roig and consequently The Estate is entitled to liquidated damages.   Florida's Constitution states in pertinent part, as follows:

(a)   PUBLIC POLICY.   All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.

(b)   DEFINITIONS.   As used in this amendment, the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.

(c)   MINIMUM WAGE.   Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida. Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15. On September 30th of that year and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor. Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January 1st. For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.

(d)   RETALIATION PROHIBITED.   It shall be unlawful for an Employer or any other party to discriminate in any manner or take adverse action against any person in retaliation for exercising rights protected under this amendment. Rights protected under this amendment include, but are not limited to, the right to file a complaint or inform any person about any party's alleged noncompliance with this amendment, and the right to inform any person of his or her potential rights under this amendment and to assist him or her in asserting such rights.

(e) ENFORCEMENT. Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs. In addition, they shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief. Any Employer or other person found liable for willfully violating this amendment shall also be subject to a fine payable to the state in the amount of $1000.00 for each violation. The state attorney general or other official designated by the state legislature may also bring a civil action to enforce this amendment. Actions to enforce this amendment shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

(f) ADDITIONAL LEGISLATION, IMPLEMENTATION AND CONSTRUCTION. Implementing legislation is not required in order to enforce this amendment.

Florida Const. Art. 10 § 24(a-e). Roig believed in good faith that the actions of the Defendants' as

set forth in Count IX constituted a violation of the Florida Constitution, and his complaints about it

to the Defendants constitutes protected activity under the retaliation clause. Roig complained in

writing, and let the Defendants know that he was working while in facilities receiving no pay.

WHEREFORE, as to Count IX, The Estate is entitled to be paid back pay, front pay, plus

liquidated damages, compensatory damages, prejudgment interest, post-judgment interest, attorneys

fees, and costs.

## DEMAND FOR TRIAL BY JURY

The Estate, Olivera, Kyle, and Sam demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: February 28, 2020

Respectfully submitted,

/s/  *Robert A. Rosenberg, Esq.*
Robert A. Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

C:/MyDocuments/Roig-Complaint-Refiled02/28/20

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL
## CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

### SUMMONS

THE ESTATE OF SAMUEL I. ROIG, by and     CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

     Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

     Defendants.

_____/

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on

**DEFENDANT: UNITED PARCEL SERVICE, INC**
       **c/o Registered Agent - CORPORATION SERVICE COMPANY**
       **1201 Hays Street**
       **Tallahassee, Florida 32301**

Each Defendant is required to serve written defenses to the Complaint or Petition on:
Plaintiff's attorney:

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd, Suite 105
Plantation, FL 33324
(954) 424-1933

within 20 days after this summons on that Defendant, exclusive of the day of service, and to file the
original of the defenses with the clerk of this court either before service on plaintiffs; attorney or
immediately thereafter. If a Defendant fails to do so, a default will be entered against the Defendant for
the relief demanded in the Complaint or Petition.

DATED_____      MAR 02 2020    .

(Court Seal)

                    Clerk of the Court

                    By: _____
                       Deputy Clerk

                    **BRENDA D. FORMAN**

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL
## CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

### SUMMONS

THE ESTATE OF SAMUEL I. ROIG, by and     CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

      Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

      Defendants.

_____/

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on

   **DEFENDANT: ROMAINE SEGUIN**
           **7561 SW 56 CT**
           **MIAMI, FL 33143**

Each Defendant is required to serve written defenses to the Complaint or Petition on:
Plaintiff's attorney:

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd, Suite 105
Plantation, FL 33324
(954) 424-1933

within 20 days after this summons on that Defendant, exclusive of the day of service, and to file the
original of the defenses with the clerk of this court either before service on plaintiffs; attorney or
immediately thereafter.  If a Defendant fails to do so, a default will be entered against the Defendant for
the relief demanded in the Complaint or Petition.

DATED_____ MAR 02 2020

(Court Seal)

Clerk of the Circuit Court

By: _____
     Deputy

**BRENDA D. FORMAN**

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL
## CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

### SUMMONS

THE ESTATE OF SAMUEL I. ROIG, by and     CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

     Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

     Defendants.
_____/

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on

**DEFENDANT: THOMAS O'MALLEY**
      **616 Jeronimo Drive**
      **Coral Gables, Florida 33146**

Each Defendant is required to serve written defenses to the Complaint or Petition on:
Plaintiff's attorney:

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd, Suite 105
Plantation, FL 33324
(954) 424-1933

within 20 days after this summons on that Defendant, exclusive of the day of service, and to file the
original of the defenses with the clerk of this court either before service on plaintiffs; attorney or
immediately thereafter. If a Defendant fails to do so, a default will be entered against the Defendant for
the relief demanded in the Complaint or Petition.

DATED_____ MAR 02 2020

(Court Seal)

Clerk of the Court

By: _____
    Deputy

**BRENDA D. FORMAN**

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and    CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

       Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

       Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
## DOCUMENTS TO DEFENDANT UNITED PARCEL SERVICE, INC.

Plaintiff, Javier Salman, by and through undersigned counsel and pursuant to Rule 1.350

of the Florida Rules of Civil Procedure, hereby requests the Defendant, to produce and permit

the inspection and copying of the following documents and tangible things hereinafter within

forty-five (45) days from the date of service hereof.

As used herein, the term "document" shall mean every writing of record of every type

and description that is in the possession, custody, or control of Defendant, including, without

limitation, correspondence, statements, affidavits, memoranda, stenographic and handwritten

notes, diagrams, studies, publications, books, pamphlets, pictures, drawings and schematics of

every type, film, voice recordings, audio tape recordings, maps, reports, surveys, minutes,

telegrams, telexes, contracts, memoranda of agreement, diaries, graphs, emails, electronically-

stored information, checks, bank statements, income tax forms, other forms, microfilms,

statistical computations, data processing cards, computer records and computer tapes and

printouts or things similar to any of the foregoing; and every copy of such document where the original is not in the possession, custody, or control of Defendant, or Defendant's counsel.  Any such document bearing on any sheet or side thereof, any marks such as (but not limited to) initials, stamped indicia, comments or notations, or any character not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate document.

This document request shall be deemed to be a continuing one, and it pertains to all documents discovered or found subsequent to the date of your response to this request for production. Any such documents discovered or found subsequent to the date of your response to this request for production, shall be produced upon appropriate notice to the undersigned attorneys.

For purposes of this Request for Production, "Defendant" refers to United Parcel Service, Inc., and "Plaintiff" refers to the decedent Mr. Samuel Roig.

**WHERE A CLAIM OF PRIVILEGE IS ASSERTED IN OBJECTING TO ANY DOCUMENT DEMAND, AND AN ANSWER IS NOT PROVIDED ON THE BASIS OF SUCH ASSERTION, PROVIDE THE INFORMATION REQUIRED BY THE FLORIDA RULES OF CIVIL PROCEDURE.**

## DOCUMENTS TO BE PRODUCED

1.      Plaintiff's entire personnel file, including but not limited to the records pertaining to duties, salaries, commissions, bonuses, discharge, layoff or retirement.

2.      Documents of any type whatsoever which show any internal communications concerning Defendant's consideration of Plaintiff for termination or demotion at any time throughout the time he was employed by the Defendant.

3.      Documents of any type whatsoever which show any internal communications concerning Plaintiff's performance or performance problems, irrespective of whether same appears in Plaintiff's personnel file.

4.      Copies of any and all written policies or procedures utilized within the last five (5) years within the company regarding age and/or disability harassment, retaliation and/or discrimination based on age and/or disability arising under Title VII, The Age Discrimination in Employment Act and/or the Florida Civil Rights Act of 1992, irrespective of whether same is contained in the company's personnel manual.

5.      Any and all documents, memoranda or written summaries of any conversation or meetings with any past or present employee(s) of Defendant regarding the allegations of Plaintiff's Complaint.

6.      Any and all other documents, excluding only documents evidencing communications between Defendant and its attorneys, reflecting each communication (*e.g.*, letters, memoranda, telephone calls, face-to-face conversations, facsimile transmissions, etc.) between, among, to or from any agents, servants and/or employees of Defendant concerning the allegations of Plaintiff's Complaint.

7.      Any and all witness statements, whether written, typed, taped, or otherwise recorded, describing or relating to the conduct of which Plaintiff has complained in the Complaint filed in this action.

8.      The personnel files of all employees who filed complaints with the Defendant or its predecessors or any government agency alleging harassment, retaliation and/or discrimination based on age and/or disability against the Defendant, in the past five (5) years, within the State of Florida.

9.      The Plaintiff's complete salary and wage records, payroll records, commission records, and W-2 forms during his employment with the Defendant.

10.     All guidelines, policies, procedures, manuals, handbooks, notices or directives utilized and/or issued by the Defendant within the last five (5) years pertaining to the following:

(a)     The discipline and termination of its employees;

(b)     The performance evaluation of its employees;

(c)     Age and/or disability harassment.

(d)     Retaliation.

(e)     Age and/or disability discrimination.

11.     Copies of all charges of wrongful termination on the basis of harassment, retaliation and/or discrimination based on age and/or disability filed against the Defendant in the past 5 years with the Equal Employment Opportunity Commission, Florida Commission on Human Relations, the United States Department of Labor, and/or any other federal, state or local agency, by employees of the Defendant, within the State of Florida.

12. Complaints concerning the work performance of Plaintiff throughout the time he was employed by the Defendant, including any written warning notices to Plaintiff about these complaints.

13. Complaints from any employee or customer of the Defendant, or from any other person, regarding Plaintiff throughout the time Plaintiff provided services to the Defendant.

14. The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by the Defendant in the above-entitled proceeding.

15. All reports, studies and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by the Defendant in the above-entitled proceeding.

16. Insurance policies which the Defendant may have insuring it against liability for any claims of employment discrimination or torts including negligence, including those in the above-entitled proceeding, during the past five (5) years.

17. Any "reservation of rights" letter and/or denial of coverage letter from the Defendant's insurer regarding the above-entitled proceeding.

18. All documents which in any way support the Defendant's affirmative defenses.

19. Any and all documents submitted to the EEOC, FCHR, and/or the Broward County, Miami-Dade County, or Palm Beach County or equivalent, in connection with Plaintiff.

20. Any and all memoranda, diaries, journals or other documents prepared by Defendant or any of its officers, directors and employees, or any other person, which relate in any manner to Plaintiff's employment, whether or not prepared in anticipation of litigation.

21. All of Defendant's disciplinary records regarding Plaintiff.

22.     The complete personnel file, including but not limited to the records pertaining to duties, promotion, salary, commission, bonuses, evaluations, discharge, layoff or retirement of any person who participated in the decision to terminate the Plaintiff.

23.     All documents which indicate the breakdown of the workforce by each of the following characteristics: name, date of hire, transfers, promotions, age, gender, race, ancestry, religion, during the time Plaintiff provided services to the company through the present time in the state of Florida.

24.     Any and all documents pertaining to job descriptions or job qualifications for all positions held by Plaintiff with the Defendant.

25.     The personnel files of each employee similarly situated to Plaintiff who was employed by the company during the last five (5) years in the state of Florida.

26.     All studies, reports, or analysis done by internal staff, consultants, government agencies, or others related to any and all employment practice, policy, procedure, or statistics of the Defendant, if conducted during the last five (5) years.

27.     Any and all letters, notes, memoranda, and records of any kind, including adverse, negative, or favorable comments concerning the Plaintiff, during the period of time that Plaintiff worked for Defendant.

28.     The complete personnel file including but not limited to the records pertaining to dates, promotions, salary, commissions, bonuses, evaluations, discharge, layoff or retirement of the person who replaced Plaintiff at the location where he worked when he separated from employment with Defendant.

29.     All documents related to the Defendant's efforts to prevent employment discrimination in the workplace, including those made by the Defendant in an effort to comply

with state and federal laws or regulations relating to the maintenance of a non-discriminatory environment, if generated within the last five (5) years.

30.     Any and all documents provided to Florida Department of Labor and Employment Security, the Unemployment Appeals Commission, or any other governmental agency concerning any unemployment claim or perceived unemployment claim filed by Plaintiff.

31.     All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories or used in answering those interrogatories.

32.     All documents relied on in drafting the Defendant's Answer and Affirmative Defenses.

33.     All documents pertaining to any investigation of discrimination or harassment based on any complaints by Plaintiff to Defendant or any governmental agency.

34.     The personnel files of:

a) Thomas O'Malley

b) all employees similarly situated to Mr. Roig

c) Mr. Roig's replacement

d) Romain Seguin

e) Juan Vicente

f) Guillermo Alvarez

g) Mark Labasco

h) Mr. Roig's subordinates

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served with the initial complaint this <u>28th</u> day of February, 2020.

/s/*Robert A. Rosenberg*
Robert A. Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
assistant@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and          CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

      Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

      Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ROMAINE SEGUIN

Plaintiffs, by and through their undersigned counsel and pursuant to Rule 1.350 of the
Florida Rules of Civil Procedure, requests that Defendant, Romaine Seguin, to produce and
permit Plaintiff to inspect and copy the documents and tangible things hereinafter designated
within forty-five (45) days from the date of service hereof.

As used herein, the term "document" shall mean every writing of record of every type
and description that is in the possession, custody, or control of Defendant, including, without
limitation, correspondence, statements, affidavits, memoranda, stenographic and handwritten
notes, diagrams, studies, publications, books, pamphlets, pictures, drawings and schematics of
every type, film, voice recordings, audio tape recordings, maps, reports, surveys, minutes,
telegrams, telexes, contracts, memoranda of agreement, diaries, graphs, e-mails, electronically-
stored information, checks, bank statements, income tax forms, other forms, microfilms,
statistical computations, data processing cards, computer records and computer tapes and

printouts or things similar to any of the foregoing; and every copy of such document where the original is not in the possession, custody, or control of Defendant, or Defendant's counsel.  Any such document bearing on any sheet or side thereof, any marks such as (but not limited to) initials, stamped indicia, comments or notations, or any character not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate document.

This document request shall be deemed to be a continuing one, and it pertains to all documents discovered or found subsequent to the date of your response to this request for production. Any such documents discovered or found subsequent to the date of your response to this request for production, shall be produced upon appropriate notice to the undersigned attorneys.

For purposes of this Request for Production, "Defendant" refers to Romaine Seguin and "Plaintiff" refers to the decedent Mr. Samuel Roig.

**WHERE A CLAIM OF PRIVILEGE IS ASSERTED IN OBJECTING TO ANY DOCUMENT DEMAND, AND AN ANSWER IS NOT PROVIDED ON THE BASIS OF SUCH ASSERTION, PROVIDE THE INFORMATION REQUIRED BY THE FLORIDA RULES OF CIVIL PROCEDURE.**

## DOCUMENTS TO BE PRODUCED

1.      All discipline and evaluations of you by the corporate Defendant from January 1, 2010 to present.

2.      Your current resume.

3.      All witness statements obtained regarding the subject litigation.

4.      All e-mails or correspondence sent to you or received by you relating to Samuel Roig since November 2011.

5.      All e-mails or correspondence sent to or received from Samuel Roig since November 2011.

6.      All documents that set forth your current employment and responsibilities.

7.      Copies of all charges of age and/or disability and/or retaliation discrimination referring to any inappropriate behavior by you or made by you against anyone else in the past 10 years that was filed with the Equal Employment Opportunity Commission, Florida Commission on Human Relations, the United States Department of Labor and/or any other federal, state or local agency within the State of Florida.

8.      Complaints concerning your work performance throughout the time you were employed by the corporate Defendant or any complaints you made against anyone else.

9.      Complaints from any employee or manager of the business entity Defendants, about you during the time you were as employed by the business entity Defendants.

10.     Any write-ups or discipline you received from the business entity Defendants for any alleged mistreatment of an employee or manager during the time you were employed by the business entity Defendants.

11.     The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by you in the above-entitled proceeding.

12.     All reports, studies and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by you in the above-entitled proceeding.

13.     Insurance policies which the business entity Defendants may have insuring and/or covering you against liability for any claims in the subject lawsuit, including employment and tort claims.

14.     Insurance policies which you may have insuring and/or covering you against liability for any claims in the subject lawsuit, including employment and tort claims.

15.     Any "reservation of rights" letter and/or denial of coverage letter from any insurer regarding the above-entitled proceeding.

16.     All documents which in any way support your affirmative defenses.

17.     Any and all documents pertaining to job descriptions or job qualifications for all positions held by you with the business entity Defendants.

18.     All documents identified in your answers to Plaintiff's First Set of Interrogatories or used in answering those interrogatories.

19.     All documents relied on in drafting your Answer and Affirmative Defenses.

20.     Any stock certificates showing your ownership interest in the corporate Defendant.

21.     Any agreement between you and the business entity Defendants at any time.

22.     All documents reflecting, pertaining, or relating to communications you have had with Defendant O'Malley concerning Mr. Roig, Mr. Roig's employment, or this case since 2011 to the present.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served with the initial complaint this 28th day of February, 2020.

/s/*Robert A. Rosenberg*
Robert A. Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
assistant@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and     CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

      Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

      Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT THOMAS O'MALLEY

Plaintiffs, by and through their undersigned counsel and pursuant to Rule 1.350 of the

Florida Rules of Civil Procedure, requests that Defendant, Thomas O'Malley, to produce and

permit Plaintiff to inspect and copy the documents and tangible things hereinafter designated

within forty-five (45) days from the date of service hereof.

As used herein, the term "document" shall mean every writing of record of every type

and description that is in the possession, custody, or control of Defendant, including, without

limitation, correspondence, statements, affidavits, memoranda, stenographic and handwritten

notes, diagrams, studies, publications, books, pamphlets, pictures, drawings and schematics of

every type, film, voice recordings, audio tape recordings, maps, reports, surveys, minutes,

telegrams, telexes, contracts, memoranda of agreement, diaries, graphs, e-mails, electronically-

stored information, checks, bank statements, income tax forms, other forms, microfilms,

statistical computations, data processing cards, computer records and computer tapes and

printouts or things similar to any of the foregoing; and every copy of such document where the original is not in the possession, custody, or control of Defendant, or Defendant's counsel.  Any such document bearing on any sheet or side thereof, any marks such as (but not limited to) initials, stamped indicia, comments or notations, or any character not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate document.

This document request shall be deemed to be a continuing one, and it pertains to all documents discovered or found subsequent to the date of your response to this request for production. Any such documents discovered or found subsequent to the date of your response to this request for production, shall be produced upon appropriate notice to the undersigned attorneys.

For purposes of this Request for Production, "Defendant" refers to Thomas O'Malley and "Plaintiff" refers to the decedent Mr. Samuel Roig.

**WHERE A CLAIM OF PRIVILEGE IS ASSERTED IN OBJECTING TO ANY DOCUMENT DEMAND, AND AN ANSWER IS NOT PROVIDED ON THE BASIS OF SUCH ASSERTION, PROVIDE THE INFORMATION REQUIRED BY THE FLORIDA RULES OF CIVIL PROCEDURE.**

## DOCUMENTS TO BE PRODUCED

1.      All discipline and evaluations of you by the corporate Defendant from January 1, 2010 to present.

2.      Your current resume.

3.      All witness statements obtained regarding the subject litigation.

4.      All e-mails or correspondence sent to you or received by you relating to Samuel Roig since November 2011.

5.      All e-mails or correspondence sent to or received from Samuel Roig since November 2011.

6.      All documents that set forth your current employment and responsibilities.

7.      Copies of all charges of age and/or disability and/or retaliation discrimination referring to any inappropriate behavior by you or made by you against anyone else in the past 10 years that was filed with the Equal Employment Opportunity Commission, Florida Commission on Human Relations, the United States Department of Labor and/or any other federal, state or local agency within the State of Florida.

8.      Complaints concerning your work performance throughout the time you were employed by the corporate Defendant or any complaints you made against anyone else.

9.      Complaints from any employee or manager of the business entity Defendants, about you during the time you were as employed by the business entity Defendants.

10.     Any write-ups or discipline you received from the business entity Defendants for any alleged mistreatment of an employee or manager during the time you were employed by the business entity Defendants.

11.     The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by you in the above-entitled proceeding.

12.     All reports, studies and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by you in the above-entitled proceeding.

13.     Insurance policies which the business entity Defendants may have insuring and/or covering you against liability for any claims in the subject lawsuit, including employment and tort claims.

14.     Insurance policies which you may have insuring and/or covering you against liability for any claims in the subject lawsuit, including employment and tort claims.

15.     Any "reservation of rights" letter and/or denial of coverage letter from any insurer regarding the above-entitled proceeding.

16.     All documents which in any way support your affirmative defenses.

17.     Any and all documents pertaining to job descriptions or job qualifications for all positions held by you with the business entity Defendants.

18.     All documents identified in your answers to Plaintiff's First Set of Interrogatories or used in answering those interrogatories.

19.     All documents relied on in drafting your Answer and Affirmative Defenses.

20.     Any stock certificates showing your ownership interest in the corporate Defendant.

21.     Any agreement between you and the business entity Defendants at any time.

22.     All documents reflecting, pertaining, or relating to communications you have had with Defendant Seguin concerning Mr. Roig, Mr. Roig's employment, or this case since 2011 to the present.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served with the initial complaint this 28th day of February, 2020.

/s/ *Robert A. Rosenberg, Esq.*
Robert A. Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemplovmentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and     CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

       Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

       Defendants.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT UNITED PARCEL SERVICE, INC.

Pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, Plaintiff propounds the

following interrogatories to Defendant United Parcel Service, Inc. (hereinafter "Defendant") to be

answered fully and completely in accordance with that rule. Each of the following interrogatories is

continuing in nature. If at any time prior to the conclusion of the trial, Defendant, or its agents or

attorneys, acquire supplemental or additional information relating to any of the subjects addressed

herein, Defendant is requested to supplement its answers to these interrogatories to reflect such

information.

## INSTRUCTIONS

In answering these interrogatories, the following instructions and definitions apply:

A.   You are required to furnish all information which is available to you, including

information in the possession of your agents or representatives, or any other person or organization

acting on your behalf, and not merely such information known personally to you.

B. If you cannot answer any of the following interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible and state whatever information or knowledge you have concerning the unanswered portions.

C. Each interrogatory not only calls for information known to Defendant but also for all information available to Defendant through reasonable inquiry.

D. In each case where Defendant identifies a person, state with respect to each such person:

    1. His or her full name;

    2. His or her last known residence address;

    3. His or her telephone number:

    4. His or her occupation, employer and business address at the date of the event or transaction referred to; and

    5. His or her present occupation, employer and business address.

E. In each case wherein Defendant is asked to identify a writing or document, or when the answer to an interrogatory refers to a writing or document, please attach a copy of the document to your answer, or if the document is not available, state with respect to each such writing or document:

    1. The identity of the person who signed it or over whose name it was issued;

    2. The addressee or addressees;

    3. The nature and substance of the document or writing with sufficient particularity to enable the same to be identified;

    4. The date of the document or writing; and

    5. The identity of each person who has custody of the document or writing or any copies thereof.

F.     For purposes of these Interrogatories, "Defendant", "you", or "your" refers to United Parcel Service, Inc. and "Plaintiff" refers to Mr. Samuel Roig the decedent.

G.     Where a claim of privilege is asserted in objecting to any interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, provide the information required pursuant to the Florida Rules of Civil Procedure.

## **INTERROGATORIES**

1.   With respect to Plaintiff Samuel Roig:

    a.   identify who participated in the decision to deny him his MIPs Bonus and pay increase in or about April 2016;

    b.   identify each document (*e.g.*, personnel files, annual evaluations, etc.) reviewed in the decision-making process;

    c.   identify each document that was used and/or created during the decision-making process, provided a basis for the decision, or was used as an after-the-fact analysis of the decision; and

    d.   identify by description, date, substance, and, if a document is involved, the name of its custodian and current location, each communication (*e.g.*, letters memoranda, telephone call, face-to-face conversation, facsimile transmission, etc.) among any agents, servants, and/or employees of the Defendant concerning the decision to deny the MIPs Bonus and pay increase in or about April 2016 to Mr. Samuel Roig.

Answer:

2.      Fully articulate who decided to deny Mr. Roig his MIPs Bonus and pay increase in or about April 2016, why, and if you assert Mr. Samuel Roig was not denied his MIPs Bonus and pay increase in or about April 2016, state those reasons.

<u>Answer</u>:

3.      Please describe any discipline Plaintiff, Samuel Roig, received while employed with the Defendant and who the decision-maker was concerning each such discipline, including the decision to deny him his MIPs Bonus and pay increase in or about April 2016.

Answer:

4.      Please provide the last known address of the person who made the decision to deny Mr. Roig's MIPs Bonus and pay increase in or about April 2016, where he/she is currently employed and the position he/she holds, and if no longer employed with the Defendant state his/her last known address.

Answer:

5. Identify all employees, officers, directors, or members of the organization of the Defendant who ever recommended that Mr. Roig's MIPs Bonus and pay increase in or about April 2016 should be denied, and the state the reason for such recommendation.

<u>Answer</u>:

6.      Please provide the name, sex, age, religion and last known address of the individual(s) who replaced the Plaintiff, Samuel Roig, at the location where Plaintiff worked for the Defendant for all such individuals who have held her job since he was denied his MIPs Bonus and pay increase in or about April 2016.

    Answer:

7.      List the names, addresses and phone numbers of all persons who are believed or known

by you, your agents or your attorneys to have any knowledge concerning any of the issues in this

lawsuit and specify the subject matter about which each person has knowledge.

Answer:

## **VERIFICATION**

I, _____, being first duly sworn in accordance with law, do hereby depose and state that I have read the answers to Plaintiff's First Set of Interrogatories and that the answers are true and correct to the best of my knowledge and information.

_____
Corporate Representative

STATE OF FLORIDA

COUNTY OF

The foregoing instrument was executed before me this _____ day of _____, 2020, by _____, who is personally known to me or who has produced

_____ as identification and who did take an oath.

_____
NOTARY PUBLIC

My Commission Expires:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served with the initial complaint this <u>28th</u> day of February, 2020.

/s/   *Robert A. Rosenberg, Esq.*
Robert  A.  Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemplovmentlaw.com
assistant@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and            CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

      Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

      Defendants.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT ROMAINE SEGUIN

Pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, Plaintiff propounds the

following interrogatories to Defendant, Romaine Seguin, to be answered fully and completely in

accordance with that rule. Each of the following interrogatories is continuing in nature. If at any

time prior to the conclusion of the trial, Defendant, or its agents or attorneys, acquire supplemental

or additional information relating to any of the subjects addressed herein, Defendant is requested to

supplement its answers to these interrogatories to reflect such information.

## INSTRUCTIONS

In answering these interrogatories, the following instructions and definitions apply:

A.   You are required to furnish all information which is available to you, including

information in the possession of your agents or representatives, or any other person or organization

acting on your behalf, and not merely such information known personally to you.

B. If you cannot answer any of the following interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible and state whatever information or knowledge you have concerning the unanswered portions.

C. Each interrogatory not only calls for information known to Defendant but also for all information available to Defendant through reasonable inquiry.

D. In each case where Defendant identifies a person, state with respect to each such person:

1. His or her full name;

2. His or her last known residence address;

3. His or her telephone number:

4. His or her occupation, employer and business address at the date of the event or transaction referred to; and

5. His or her present occupation, employer and business address.

E. In each case wherein Defendant is asked to identify a writing or document, or when the answer to an interrogatory refers to a writing or document, please attach a copy of the document to your answer, or if the document is not available, state with respect to each such writing or document:

1. The identity of the person who signed it or over whose name it was issued;

2. The addressee or addressees;

3. The nature and substance of the document or writing with sufficient particularity to enable the same to be identified;

4. The date of the document or writing; and

5. The identity of each person who has custody of the document or writing or any copies thereof.

F.      For purposes of these Interrogatories, "Defendant", "you", or "your" refers to Romaine Seguin "Plaintiff" refers to Mr. Samuel Roig.

G.      Where a claim of privilege is asserted in objecting to any interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, provide the information required pursuant to the Florida Rules of Civil Procedure.

## **INTERROGATORIES**

1.      State all companies and their addresses that you have worked for, the length of time and

the position(s) held since January 1, 2009.

Answer:

2.      State the names and current addresses of all individuals who will assert that you rightfully denied Samuel Roig from receiving his MIPs Bonus and pay increase in or about April 2016 with the corporate Defendant or rightfully approved the decision by Defendant O'Malley to deny them to Mr. Roig.

Answer:

3.      State your current position with the corporate Defendant, the length of time you have

held the position and your duties and responsibilities.

Answer:

4.     State whether you have an ownership interest with the business entity Defendant, the length of time you had this interest and your percentage ownership interest in an of the business entity Defendant.

       Answer:

5.    State the names of all employees of the business entity Defendant over the past 5 years who have been terminated by you, and state that terminated employee's position, age, and whether they had a disability or requested a reasonable accommodation, the reason for the termination and the date that the termination took place.

Answer:

6.     State any management or other employment position(s) you held with the business entity

Defendant other than your current position, the title of each position and the period of time you

held each such position.

Answer:

7.    State the nature of any discipline you received from the business entity Defendant since

January 1, 2010 and who issued each such discipline and why.

    Answer:

8.      State why Samuel Roig did not receive his MIPs Bonus and pay increase in or about April 2016 with the corporate Defendant and state why his subordinates did receive their MIPs Bonus and pay increases in or about April 2016.

Answer:

## **VERIFICATION**

I, _____, being first duly sworn in accordance with law, do hereby depose and state that I have read the answers to Plaintiff's First Set of Interrogatories and that the answers are true and correct to the best of my knowledge and information.

_____

ROMAINE SEGUIN

STATE OF FLORIDA

COUNTY OF

The foregoing instrument was executed before me this _____ day of _____, 2020, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____

NOTARY PUBLIC

My Commission Expires:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served with the initial complaint this 28th day of February, 2020.

/s/*Robert A. Rosenberg*
Robert  A.  Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
assistant@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

THE ESTATE OF SAMUEL I. ROIG, by and        CASE NO.:
through its Personal Representative GAIL
OLIVERA, GAIL OLIVERA, an individual,
KYLE ROIG, an individual, and SAM ROIG,
an individual,

       Plaintiffs,

v.

UNITED PARCEL SERVICE, INC., a business
entity, and THOMAS O'MALLEY, an individual,
and ROMAINE SEGUIN, an individual,

       Defendants.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT THOMAS O'MALLEY

Pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, Plaintiff propounds the following interrogatories to Defendant, Thomas O'Malley, to be answered fully and completely in accordance with that rule. Each of the following interrogatories is continuing in nature. If at any time prior to the conclusion of the trial, Defendant, or its agents or attorneys, acquire supplemental or additional information relating to any of the subjects addressed herein, Defendant is requested to supplement its answers to these interrogatories to reflect such information.

## INSTRUCTIONS

In answering these interrogatories, the following instructions and definitions apply:

A. You are required to furnish all information which is available to you, including information in the possession of your agents or representatives, or any other person or organization acting on your behalf, and not merely such information known personally to you.

B.   If you cannot answer any of the following interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible and state whatever information or knowledge you have concerning the unanswered portions.

C.   Each interrogatory not only calls for information known to Defendant but also for all information available to Defendant through reasonable inquiry.

D.   In each case where Defendant identifies a person, state with respect to each such person:

1.   His or her full name;

2.   His or her last known residence address;

3.   His or her telephone number:

4.   His or her occupation, employer and business address at the date of the event or transaction referred to; and

5.   His or her present occupation, employer and business address.

E.   In each case wherein Defendant is asked to identify a writing or document, or when the answer to an interrogatory refers to a writing or document, please attach a copy of the document to your answer, or if the document is not available, state with respect to each such writing or document:

1.   The identity of the person who signed it or over whose name it was issued;

2.   The addressee or addressees;

3.   The nature and substance of the document or writing with sufficient particularity to enable the same to be identified;

4.   The date of the document or writing; and

5.   The identity of each person who has custody of the document or writing or any copies thereof.

F.     For purposes of these Interrogatories, "Defendant", "you", or "your" refers to Thomas O'Malley "Plaintiff" refers to Mr. Samuel Roig.

G.     Where a claim of privilege is asserted in objecting to any interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, provide the information required pursuant to the Florida Rules of Civil Procedure.

## **INTERROGATORIES**

1.      State all companies and their addresses that you have worked for, the length of time and

the position(s) held since January 1, 2009.

Answer:

2.      State the names and current addresses of all individuals who will assert that you rightfully denied Samuel Roig from receiving his MIPs Bonus and pay increase in or about April 2016 with the corporate Defendant.

Answer:

3.    State your current position with the corporate Defendant, the length of time you have

held the position and your duties and responsibilities.

<u>Answer</u>:

4.     State whether you have an ownership interest with the business entity Defendant, the length of time you had this interest and your percentage ownership interest in an of the business entity Defendant.

        Answer:

5.     State the names of all employees of the business entity Defendant over the past 5 years who have been terminated by you, and state that terminated employee's position, age, and whether they had a disability or requested a reasonable accommodation, the reason for the termination and the date that the termination took place.

Answer:

6.     State any management or other employment position(s) you held with the business entity

Defendant other than your current position, the title of each position and the period of time you

held each such position.

Answer:

7.     State the nature of any discipline you received from the business entity Defendant since

January 1, 2010 and who issued each such discipline and why.

<u>Answer</u>:

8.      State why Samuel Roig did not receive his MIPs Bonus and pay increase in or about April 2016 with the corporate Defendant and state why his subordinates did receive their MIPs Bonus and pay increases in or about April 2016.

Answer:

## VERIFICATION

I, _____, being first duly sworn in accordance with law, do hereby depose and state that I have read the answers to Plaintiff's First Set of Interrogatories and that the answers are true and correct to the best of my knowledge and information.

_____
THOMAS O'MALLEY

STATE OF FLORIDA

COUNTY OF

The foregoing instrument was executed before me this _____ day of _____, 2020, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____
NOTARY PUBLIC

My Commission Expires:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served with the initial complaint this 28th day of February, 2020.

/s/*Robert A. Rosenberg*
Robert A. Rosenberg
Fla. Bar No.118887
grebnesor1942@gmail.com
The Law Offices of Robert A. Rosenberg

Chris Kleppin
Fla.BarNo.625485
ckleppin@gkemplovmentlaw.com
assistant@gkemploymentlaw.com
The Kleppin Firm, P.A.
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax: (954) 474-7405

## RETURN OF SERVICE

**State of Florida**  **County of Broward**  **Circuit Court**

Case Number: CACE-20-003750

Plaintiff:
**THE ESTATE OF SAMUEL I. ROIG, BY AND THROUGH ITS PERSONAL REPRESENTATIVE GAIL OLIVERA, GAIL OLIVERA, AN INDIVIDUAL, KYLE ROIG, AN INDIVIDUAL, AND SAM ROIG, AN INDIVIDUAL**

vs.

Defendant:
**UNITED PAECEL SERVICE INC., A BUSINESS ENTITY, AND THOMAS O'MALLEY, AN INDIVIDUAL, AND ROMAINE SEGUIN, AN INDIVIDUAL**

For:
Chris Kleppin, Esq.
Glasser & Kleppin, P. A.
8751 W. Broward Boulevard
Suite 105
Plantation, FL 33324

Received by Lightning Process Services on the 4th day of March, 2020 at 5:41 am to be served on **THOMAS O'MALLEY, 616 JERONIMO DRIVE, CORAL GABLES, FL 33146**.

I, Julio Melo, do hereby affirm that on the **18th day of March, 2020** at **8:15 am, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS and COMPLAINT and FIRST REQUEST FOR PRODUCTION TO DEFENDANT and FIRST SET OF INTERROGATORIES TO DEFENDANT** with the date and hour of service endorsed thereon by me, to: **THOMAS O'MALLEY** at the address of: **616 JERONIMO DRIVE, CORAL GABLES, FL 33146**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

**Marital Status:** Based upon inquiry of party served, Defendant is married.

**Additional Information pertaining to this Service:**
3/4/2020  12:00 pm  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer. White BMW X3 in driveway. Tag KXXU81.
3/4/2020  4:16 pm  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer same car.
3/4/2020  4:37 pm  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer no movement.
3/5/2020  7:44 am  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer no movement. Marked door yesterday, still there. Also BMW still in same spot and only car in driveway like yesterday.
3/6/2020  8:33 am  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer. Same BMW in driveway. Hasn't moved.
3/7/2020  10:46 am  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, no answer no movement. Same car in driveway.
3/10/2020  8:12 am  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146, cleaning lady in. Spoke to me through window. Confirmed defendant lives here. Would not say when anyone in. She Is not a resident. Same BMW in driveway
3/13/2020  7:23 am  Attempted service at 616 JERONIMO DRIVE, CORAL GABLES, FL 33146,  no answer same car but parked in different spot, this defendant is avoiding. If you want us to continue to attempt, I recommend wait time.

**Description** of Person Served: Age: 60, Sex: M, Race/Skin Color: White, Height: 6'1", Weight: 220, Hair: Grey, Glasses: N

## RETURN OF SERVICE For CACE-20-003750

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury, I declare that I have read the foregoing documents, and that the facts stated in it are true. NO NOTARY REQUIRED PURSUANT TO F.S.92.525(2)

**Julio Melo**
Certified Process Server #1179

**Lightning Process Services**
**12590 Pines Boulevard, #260748**
**Pembroke Pines, FL 33026**
**(954) 243-9579**

Our Job Serial Number: WIG-2020000378

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g

## AFFIDAVIT OF SERVICE

**State of Florida**  **County of Broward**  **Circuit Court**

Case Number: CACE-20-003750

Plaintiff:
**THE ESTATE OF SAMUEL I. ROIG, BY AND THROUGH ITS PERSONAL
REPRESENTATIVE GAIL OLIVERA, GAIL OLIVERA, AN INDIVIDUAL, KYLE ROIG,
AN INDIVIDUAL, AND SAM ROIG, AN INDIVIDUAL**



WIG2020000379

vs.

Defendant:
**UNITED PAECEL SERVICE INC., A BUSINESS ENTITY, AND THOMAS 0'MALLEY,
AN INDIVIDUAL, AND ROMAINE SEGUIN, AN INDIVIDUAL**

For:
Chris Kleppin, Esq.
Glasser & Kleppin, P. A.
8751 W. Broward Boulevard
Suite 105
Plantation, FL 33324

Received by LIGHTNING PROCESS SERVICES on the **26th day of March, 2020** at **11:47 am** to be served on **ROMAINE SEGUIN, 381 SPRINGERLINE DRIVE, NAPLES, FL 34102**.

I, DAVID MCGONIGAL., being duly sworn, depose and say that on the **27th day of March, 2020** at **4:10 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS and COMPLAINT and FIRST REQUEST FOR PRODUCTION TO DEFENDANT and FIRST SET OF INTERROGATORIES TO DEFENDANT** with the date and hour of service endorsed thereon by me, to: **ROMAINE SEGUIN** at the address of: **381 SPRINGERLINE DRIVE, NAPLES, FL 34102**, and informed said person of the contents therein, in compliance with state statutes.

I do hereby certify that I have no interest in the above action, that I am over the age of eighteen, and that I am a Certified Process Server in the circuit in which it was served. Under penalty of perjury I declare that I have read the foregoing Verified Return of Service and that the facts stated in it are true and correct. Notary not required pursuant to F.S. 92.525.

Subscribed and Sworn to before me on the 2nd day of
April, 2020 by the affiant who is personally known to me.

NOTARY PUBLIC

JANET M. LOWDERMILK
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG142075
Expires 9/18/2021

**DAVID MCGONIGAL.**
ID #157182

**LIGHTNING PROCESS SERVICES
12590 Pines Blvd.
#260748
Pembroke Pines, FL 33026
(954) 243-9579**

Our Job Serial Number: WIG-2020000379
Ref: 379

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1d

## RETURN OF SERVICE

State of Florida

County of Broward

Circuit Court

Case Number: CACE-20-003750

Plaintiff:
**THE ESTATE OF SAMUEL I. ROIG, BY AND THROUGH ITS PERSONAL
REPRESENTATIVE GAIL OLIVERA, GAIL OLIVERA, AN INDIVIDUAL, KYLE
ROIG, AN INDIVIDUAL, AND SAM ROIG, AN INDIVIDUAL**

vs.

Defendant:
**UNITED PAECEL SERVICE INC., A BUSINESS ENTITY, AND THOMAS
O'MALLEY, AN INDIVIDUAL, AND ROMAINE SEGUIN, AN INDIVIDUAL**

For:
Chris Kleppin, Esq.
Glasser & Kleppin, P. A.
8751 W. Broward Boulevard
Suite 105
Plantation, FL 33324

Received by LIGHTNING PROCESS SERVICES on the 31st day of March, 2020 at 11:16 am to be served on
**UNITED PAECEL SERVICE INC., BY SERVING CORPORATION SERVICE COMPANY, REGISTERED AGENT,
1201 HAYS STREET, TALLAHASSEE, FL 32301.**

I, MICHAEL C. NOLAN, do hereby affirm that on the **3rd day of April, 2020 at 10:00 am, I:**

**CORPORATE:** served by delivering a true copy of the **SUMMONS and COMPLAINT and FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT and FIRST SET OF INTERROGATORIES TO DEFENDANT**
with the date and hour of service endorsed thereon by me, to: **RONNIE LONG** as **AUTHORIZED
REPRESENTATIVE** for the Registered Agent of UNITED PAECEL SERVICE INC., BY SERVING CORPORATION
SERVICE COMPANY, REGISTERED AGENT at the address of: **1201 HAYS STREET, TALLAHASSEE, FL 32301,**
and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 25+, Sex: F, Race/Skin Color: WHITE, Height: 5'6", Weight: 150, Hair:
BROWN, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in
good standing, in the judicial circuit in which the process was served. Under penalty of perjury I declare that the
facts contained herein are true to the best of my knowledge.NO NOTARY REQUIRED PURSUANT TO F.S. 92.525
(2).

**MICHAEL C. NOLAN**
Certified Process Server, #111

**LIGHTNING PROCESS SERVICES
12590 PINES BOULEVARD
# 260748
PEMBROKE PINES, FL 33026
(954) 243-9579**

Our Job Serial Number: WIG-2020000493
Ref: 2020000493

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c